UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHARON BOBBITT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 04-12263-PBS |
| | ) | PLAINTIFFS' MEMORANDUM OF |
| Plaintiff, | ) | POINTS AND AUTHORITIES IN SUPPORT |
| | ) | OF THEIR MOTION FOR FINAL |
| vs. | ) | APPROVAL OF THE PROPOSED CLASS |
| | ) | ACTION SETTLEMENT |
| ANDREW J. FILIPOWSKI, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JAMES F. HOWARD, Individually and On Behalf of All Others Similarly Situated, | ) ) | |
| | ) | No. 06-11072-PBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANDREW J. FILIPOWSKI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     THE FORMS OF NOTICE APPROVED IN THE PRELIMINARY ORDER
        MEET THE REQUIREMENTS OF DUE PROCESS AND RULE 23 OF THE
        FEDERAL RULES OF CIVIL PROCEDURE ................................................3

III.    FINAL CERTIFICATION OF THE PROPOSED CLASS FOR PURPOSES OF
        THE PROPOSED SETTLEMENT IS APPROPRIATE ......................................4

        A.      The Requirements of Rule 23(a) Are Satisfied.......................................4

                1.      The Proposed Class Is so Numerous that Joinder of All Members
                        Is Impracticable.................................................................4

                2.      There Are Questions of Law and Fact Common to the Class....................5

                3.      Plaintiffs' Claims Are Typical of the Claims of the Class.........................7

                4.      Plaintiffs Will Fairly and Adequately Protect the Interests of the
                        Class...................................................................................8

        B.      The Requirements of Rule 23(b)(3) Are Also Satisfied .........................................9

                1.      Common Questions of Law and Fact Predominate over Individual
                        Questions................................................................................9

                2.      A Class Action Is Superior to Other Available Methods of
                        Adjudication.............................................................................10

IV.     UNDER THE APPLICABLE STANDARDS, THE PROPOSED SETTLEMENT
        SHOULD BE APPROVED ...........................................................................12

        A.      Courts Favor Settlements, Particularly of Class Actions......................................12

        B.      The Court Must Find that the Settlement Is Fair, Reasonable, and
                Adequate ...............................................................................13

        C.      The Relevant Factors All Militate in Favor of Approving the Settlement ...........15

                1.      The Complexity and Likely Duration of This Litigation Through
                        Trial and Appeals Favors the Settlement....................................................15

                2.      The Reaction of the Class to the Settlement Favors Approval of the
                        Settlement ...............................................................................18

**Page**

3.    The Settlement Is the Result of Arm's-Length Negotiations by Experienced Counsel ...............................................................................19

4.    The Stage of the Proceedings Favors the Settlement.................................21

5.    The Probability of Plaintiffs' Success on the Merits and in Proving Damages Favors the Settlement................................................................22

6.    The Range of Possible Recovery and the Ability of Defendants to Withstand a Greater Judgment Favors the Settlement..............................24

V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...................................26

VI.    CONCLUSION.............................................................................................................28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adair v. Sorenson*,
   134 F.R.D. 13 (D. Mass. 1991)..................................................................7, 8

*Adver. Specialty Nat'l Ass'n v. Fed. Trade Comm'n*,
   238 F.2d 108 (1st Cir. 1956)........................................................................4

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...................................................................10, 11, 12

*Andrews v. Bechtel Power Corp.*,
   780 F.2d 124 (1st Cir. 1985).......................................................................8

*Armstrong v. Bd. of Sch. Dirs.*,
   616 F.2d 305 (7th Cir. 1980) .....................................................................13

*Baffa v. Donaldson*,
   222 F.3d 52 (2d Cir. 2000)...........................................................................8

*Beecher v. Able*,
   575 F.2d 1010 (2d Cir. 1978)......................................................................27

*Bussie v. Allmerica Fin. Corp.*,
   50 F. Supp. 2d 59 (D. Mass. 1999) ............................................................14

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981)......................................................................................13

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
   100 F.3d 1041 (1st Cir. 1996)...............................................................13, 19

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ..............................................................12, 21

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..............................................................13, 14, 24

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
   177 F.R.D. 54 (D. Mass. 1997).............................................................4, 13

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
   183 F.3d 1 (1st Cir. 1999)...........................................................................13

- iii -

**Page**

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005)........................................................................................16, 24

*Durrett v. Hous. Auth. of Providence,*
    896 F.2d 600 (1st Cir. 1990) .....................................................................................12

*Fla. Trailer & Equip. Co. v. Deal,*
    284 F.2d 567 (5th Cir. 1960) .....................................................................................23

*Flinn v. FMC Corp.,*
    528 F.2d 1169 (4th Cir. 1975) ...................................................................................21

*Giusti-Bravo v. U.S. Veterans Admin.,*
    853 F. Supp. 34 (D.P.R. 1993) ..................................................................................18

*Grace v. Perception Tech. Corp.,*
    128 F.R.D. 165 (D. Mass. 1989)............................................................................7, 11

*Greebel v. FTP Software, Inc.,*
    194 F.3d 185 (1st Cir. 1999) .....................................................................................23

*Greenspun v. Bogan,*
    492 F.2d 375 (1st Cir. 1974) ..........................................................................3, 13, 18

*Grunin v. Int'l House of Pancakes,*
    513 F.2d 114 (8th Cir. 1975) .....................................................................................13

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................22

*In re Baldwin-United Corp.,*
    607 F. Supp. 1312 (S.D.N.Y. 1985)...........................................................................15

*In re Bank of Boston Corp. Sec. Litig.,*
    762 F. Supp. 1525 (D. Mass. 1991) .........................................................................7, 8

*In re Bausch & Lomb Sec. Litig.,*
    183 F.R.D. 78 (W.D.N.Y. 1998)................................................................................22

*In re Chicken Antitrust Litig. Am. Poultry,*
    669 F.2d 228 (5th Cir. 1982) .....................................................................................27

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 1981) .....................................................................................21

**Page**

*In re First Commodity Corp. Customer Accounts Litig.*,
    119 F.R.D. 301 (D. Mass. 1987)........................................................................12, 13, 15, 18

*In re Fleet/Norstar Sec. Litig.*,
    935 F. Supp. 99 (D.R.I. 1996)............................................................................. *passim*

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ...................................................................................27

*In re Heritage Bond Litig. v. U.S. Trust Co. of Texas*,
    No. 02-ML-1475 (RCx), 2005 U.S. LEXIS 13627,
    (C.D. Cal. June 10, 2005) ..............................................................................................26

*In re New England Mut. Life Ins. Co. Sales Practices Litig.*,
    204 F.R.D. 6 (D. Mass. 2001).........................................................................................4

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    230 F.R.D. 61 (D. Mass. 2005).......................................................................................7

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005)..................................................................................6, 10

*In re Stockeryale, Inc.*,
    No. 1:05 CV 00177-SM, 2007 U.S. Dist. LEXIS 94004
    (D.N.H. Dec. 18, 2007)..................................................................................................17

*In re TCW/DW N. Am. Gov't Income Trust Secs. Litig.*,
    941 F. Supp. 326 (S.D.N.Y. 1996) .................................................................................9

*In re Transkaryotic Therapies, Inc. Secs. Litig.*,
    No. 03-10165-RWZ, 2005 WL 3178162
    (D. Mass. Nov. 28, 2005)................................................................................................5

*In re Veeco Instruments, Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629
    (S.D.N.Y. Nov. 7, 2007) ...............................................................................................26

*In re Viatron Computer Sys. Corp. Litig.*,
    614 F.2d 11 (1st Cir. 1980)...........................................................................................12

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)...................12, 24

**Page**

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    720 F. Supp. 1379 (D. Ariz. 1989),
    *aff'd, Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ....................................................................................24, 26

*Kinney v. Metro Global Media, Inc.*,
    No. 99-579 ML, 2002 U.S. Dist. LEXIS 18628
    (D.R.I. Aug. 22, 2002) ..............................................................................................5, 6, 7

*Kirby v. Cullinet Software, Inc.*,
    116 F.R.D. 303 (D. Mass. 1987)..................................................................................6, 11

*Lazar v. Pierce*,
    757 F.2d 435 (1st Cir. 1985) ...........................................................................................12

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) ......................................................................................13

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
    100 F.R.D. 468 (D. Mass. 1984).....................................................................................11

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
    671 F. Supp. 819 (D. Mass. 1987) ......................................................................14, 18, 20

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997) ..........................................................................................11

*Mack v. Suffolk County*,
    191 F.R.D. 16 (D. Mass. 2000).......................................................................................11

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................22

*McCuin v. Secretary of Health & Human Servs.*,
    817 F.2d 161 (1st Cir. 1987).............................................................................................5

*Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..........................................................................................21

*Modell v. Eliot Sav. Bank*,
    139 F.R.D. 17 (D. Mass. 1991)........................................................................................8

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)............................................................................................24

Page

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ......................................................................24

*Opiela v. Bruck,*
    139 F.R.D. 257 (D. Mass. 1990) ...................................................................8

*Payne v. Goodyear Tire & Rubber Co.,*
    216 F.R.D. 21 (D. Mass. 2003) ............................................................6, 10, 11

*Priest v Zayre Corp.,*
    118 F.R.D. 552 (D. Mass. 1988) ...........................................................6, 11

*Randle v. SpecTran,*
    129 F.R.D. 386 (D. Mass. 1988) ...........................................................6, 11

*Rolland v. Cellucci,*
    191 F.R.D. 3 (D. Mass. 2000) ..............................................................4, 15

*Rubenstein v. Republic Nat'l Life Ins. Co.,*
    74 F.R.D. 337 (N.D. Tex. 1976) ..................................................................16

*Smilow v. Southwestern Bell Mobile Sys.,*
    323 F.3d 32 (1st Cir. 2003) ............................................................9, 10, 11

*Swack v. Credit Suisse First Boston,*
    230 F.R.D. 250 (D. Mass. 2005) ...................................................................5

*Tolan v. Computervision Corp.,*
    696 F. Supp. 771 (D. Mass. 1988) ................................................................8

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ..............................................................3, 14

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982) ............................................................19, 24

*White v. NFL,*
    822 F. Supp. 1389 (D. Minn. 1993),
    *aff'd* 41 F.3d 402 (8th Cir. 1994) ..............................................................27

*Williams v. First Nat'l Bank,*
    216 U.S. 582 (1910) ....................................................................................12

Page

*Young v. Katz*,
   447 F.2d 431 (5th Cir. 1971) ........................................................................14

*Zerkle v. Cleveland-Cliffs Iron Co.*,
   52 F.R.D. 151 (S.D.N.Y. 1971) ....................................................................16


## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 23 ..............................................................................3, 4, 11, 26
   Rule 23(a) ........................................................................... *passim*
   Rule 23(b) ..............................................................................4, 9, 10, 11
   Rule 23(e) ........................................................................................1

17 C.F.R.
   §10b-5(a) ...........................................................................................6
   §10b-5(c) ...........................................................................................6


## SECONDARY AUTHORITIES

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane
   *Federal Practice and Procedure* (2d ed. 1986)
   §1788 ...............................................................................................10

## I.    INTRODUCTION

Lead Plaintiffs James Tito and Frank Waddell and Plaintiffs Jeffrey A. Hoover, Patricia Diamantouros, Mike Turner and James F. Howard (together "Plaintiffs" or the "Class Representatives")[1] submit this memorandum of law pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in support of final approval of the proposed settlement (the "Settlement") of all claims asserted against Defendants in the above-captioned class action (the "Action").[2]  The terms of the Settlement are set forth in the Amended Stipulation of Settlement, dated March 20, 2008, and the exhibits thereto (the "Settlement Agreement"), and have been reached on behalf of a Class of all persons who purchased or otherwise acquired divine, inc. ("Divine" or the "Company") publicly traded securities on the open market (the "Class") during the period from September 17, 2001 through February 14, 2003, inclusive (the "Class Period").[3]  Also included in the Class are all persons or entities who exchanged their shares of the following entities for shares of divine common stock: eShare Communications, Inc. (the "eShare SubClass"), Data Return, Inc. (the "Data Return SubClass"), Delano Technology (the "Delano SubClass") and Viant Corporation (the "Viant SubClass") (collectively, the "SubClasses").

---

[1]    The stipulation also includes as "Plaintiffs" those persons who filed individual complaints that were consolidated, including Chris Brown, Julian A. Schulman, Paul Walk, Richard Paul Vail, Edward Paul Norman, Sanford Brett Kane, Kirk L. Wrobley, Roxie G. Payton and Louis P. Sankey.

[2]    Defendants include Andrew J. Filipowski and Michael P. Cullinane.  Divine is not a defendant in the litigation because it filed for bankruptcy protection.

[3]    Excluded from the Class are the Defendants, members of their immediate families, Defendants' legal representatives, any entity in which any Defendant is a trustee or has a controlling interest to the extent such entity's ownership of divine stock inured or inures to the benefit of Defendants or members of their immediate families, and their legal representatives, heirs, predecessors, successors or assigns.  Also excluded from the Class are those Persons who timely and validly requested exclusion from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

Through their efforts, Plaintiffs have succeeded in obtaining for the benefit of the Class an all-cash settlement of $6,300,000, plus interest (the "Settlement Fund"). The Settlement is an excellent result for the Class, given the significant defenses that Defendants had to Plaintiffs' allegations and the limited and contested financial resources available to pay any settlement amount. Pursuant to the Court's Amended Order Preliminarily Approving Settlement and Providing for Notice, more than 27,000 copies of the Notice of Pendency and Proposed Settlement of Class Action, Motion for Attorney Fees and Settlement Fairness Hearing (the "Notice") were mailed to potential members of the Class. Shortly after the initial mailing, a Summary Notice of Settlement was published in the national edition of *Investor's Business Daily* on May 6, 2008.

The last day to object to the Settlement, June 2, 2008, has now passed and not a single objector has come forward.[4] The overwhelmingly favorable reaction of the members of the Class underscores the reasonableness of the Settlement.

In light of the serious risks, uncertainties, delays, and expense of continued litigation, the likely difficulties to be encountered in establishing liability and especially damages, and the substantial and immediate benefit obtained for the Class, Plaintiffs respectfully request that the Court give final approval to the Settlement as fair, reasonable, and adequate and in the best interests of the Class. The Settlement, if approved, will result in a complete resolution of all claims in the action.[5]

---

[4]     No valid exclusions have been received. Although three requests which could be deemed requests for exclusion were received, two of them state that they should be excluded because they did not trade shares of divine during the Class Period and are therefore not part of the Class. The third exclusion was made by an investor who has no recoverable "damages" because they sold their shares prior to any disclosure that caused a decline in the price of divine stock. These "requests for exclusion" are attached as Exhibit A to the Judgment.

[5]     For a detailed description of the litigation, including the procedural history, claims alleged in the Complaint, and the settlement negotiations, Plaintiffs refer the Court to the Joint Declaration of

## II.    THE FORMS OF NOTICE APPROVED IN THE PRELIMINARY ORDER MEET THE REQUIREMENTS OF DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

The Court approved the notice procedures to be used in this case in its Amended Order Preliminary Approving Settlement and Providing for Notice entered April 16, 2008 (the "Preliminary Approval Order"). Plaintiffs have now completed mailing out the Notice and publishing the Summary Notice set forth in the Preliminary Approval Order.

On and after May 1, 2008, over 27,000 copies of the Notice describing the terms of the Settlement, the procedures for opting out of the Class or objecting to the Settlement, and providing details regarding the Settlement Hearing were mailed to potential Class Members or their nominees. *See* Declaration of Carole Sylvester, submitted herewith. A Summary Notice of the Settlement was published in the national edition of *Investor's Business Daily* on May 6, 2008.

The Notice identifies the parties, explains the allegations, the terms of the Settlement, the Plan of Allocation, the anticipated fee and expense requests, and the rights and options of Class Members to object to the Settlement or exclude themselves from the Class. The published Summary Notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of the full Notice and Proof of Claim form. This program is similar to the procedures approved in other cases. *See, e.g., Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974) (approving form of notice where notice apprised class members of date of fairness hearing, complaint's allegations, and settlement terms); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374-75 (9th Cir. 1993) (holding notice generally describing terms of settlement and formula for computing awards mailed out 45 days before hearing met requirements of Rule 23 and due process);

Co-Lead Counsel in Support of Final Approval of Class Action Settlement and Application for Award of Attorneys' Fees and Reimbursement of Expenses (the "Joint Declaration").

*In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 204 F.R.D. 6, 9 (D. Mass. 2001) (approving notice that explained procedure for opting out of class and consequences of failing to request exclusion from class settlement); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 61 (D. Mass. 1997) (noting class notice must be disseminated "to the greatest practical extent" and must apprise class members of terms of settlement and options available to them); *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) (finding that notice was proper where it adequately informed class members of terms of settlement).  Accordingly, Plaintiffs submit that the notice program fully satisfied the requirements of due process, Fed. R. Civ. P. 23, and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## III.   FINAL CERTIFICATION OF THE PROPOSED CLASS FOR PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE

Before addressing the substantive fairness, adequacy, and reasonableness of the Settlement, the Court must finally certify the Class for purposes of effectuating this settlement only.  Plaintiffs now move, with the agreement of Defendants, for final certification of the Class for purposes of the proposed Settlement.  The Class is a Rule 23(b)(3) "opt out" Class, which, with certain exclusions, is defined as all persons who purchased or acquired the common stock of divine during the period from September 17, 2001 through February 14, 2003, inclusive.  Also included in the Class are the SubClasses.

The parties have agreed that final certification is appropriate here, for settlement purposes, because the Class readily meets the requirements of Rules 23(a) and 23(b)(3).

### A.   The Requirements of Rule 23(a) Are Satisfied

#### 1.   The Proposed Class Is so Numerous that Joinder of All Members Is Impracticable

The class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "'Impracticability' does not mean 'impossibility,' but only the difficulty or

inconvenience of joining all members of the class." *Adver. Specialty Nat'l Ass'n v. Fed. Trade Comm'n,* 238 F.2d 108, 119 (1st Cir. 1956). The "numerosity" requirement under Fed. R. Civ. P. 23(a)(1) has been met here because the number and diverse location of putative Class Members renders it impractical to join all of the Class Members in one lawsuit. "With respect to numerosity, in the context of securities litigation, often the 'exact number of Class members is unknown . . . and can only be ascertained through appropriate discovery.'" *In re Transkaryotic Therapies, Inc. Secs. Litig.,* No. 03-10165-RWZ, 2005 WL 3178162, at *2 (D. Mass. Nov. 28, 2005) (citing *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258 (D. Mass. 2005)). Therefore, in determining whether a proposed class meets the numerosity requirement, "courts may draw reasonable inferences from the facts presented to find the requisite numerosity." *McCuin v. Secretary of Health & Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987); *Swack*, 230 F.R.D. at 258.

During the Class Period, divine common stock was actively traded on the National Association of Securities Dealers Automated Quotation ("NASDAQ"). According to divine's 10-K for the fiscal year ended December 31, 2001, the total number of shares outstanding, at November 11, 2002 was 25,751,059 of Class A Common Shares. The threshold for a presumption of impracticability of joinder is easily exceeded. *See, e.g., Kinney v. Metro Global Media, Inc.,* No. 99-579 ML, 2002 U.S. Dist. LEXIS 18628, at *12 (D.R.I. Aug. 22, 2002) (finding that numerosity requirement had been met where stock traded on NASDAQ small cap market and where "thousands, if not millions, of the shares were traded"). That over 27,000 Notices were mailed to potential Class Members also confirms numerosity. Thus, the numerosity requirement is clearly met here.

### 2.    There Are Questions of Law and Fact Common to the Class

The "commonality" requirement under Fed. R. Civ. P. 23(a)(2) has also been satisfied. Rule 23(a)(2) requires that there be "questions of law *or* fact common to the class." Fed. R. Civ. P. 23(a)(2) (emphasis added). "The threshold of commonality is not a difficult one to meet,"

particularly where, as here, "there are a number of common issues of fact and law that the class members would be required to establish to prove the defendants' liability, as well as their entitlement to damages." *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 69 (D. Mass. 2005). "It does not require that class members' claims be identical. A single common legal or factual issue can suffice." *See Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003) (quotations and internal citations omitted).

Here, the Second Consolidated Class Action Complaint (the "SC") alleges the following common questions of law and fact, among others, that exist as to all members of the Class:

(i)     whether Defendants' statements concerning divine contained false or misleading statements and/or failed to disclose material facts;

(ii)    whether Defendants' conduct constitutes a "scheme" and/or "course of business" under Rule 10b-5(a) and (c);

(iii)   whether Defendants acted with scienter;

(iv)    whether Defendants' statements were materially false and misleading;

(v)     whether Defendants' conduct caused the Class Members' losses; and

(vi)    whether the Class has sustained damages, and the measure of such damages.

Courts in this Circuit have repeatedly found that common questions of law and fact exist where, as here, the alleged wrongdoing involves material misrepresentations allegedly made in uniform statements disseminated to the investing public. *See Priest v Zayre Corp.*, 118 F.R.D. 552, 554 (D. Mass. 1988); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987); *Kinney*, 2002 U.S. Dist. LEXIS 18628, at *13 (commonality is established where misrepresentations and omissions in defendants' "press releases and required filings with the SEC" caused their stock "to trade at artificially inflated prices"); *Randle v. SpecTran,* 129 F.R.D. 386, 390 (D. Mass. 1988) ("Plaintiffs present common questions in their allegations of misstatements and omission[s] in various [company] public financial documents."). Moreover, in a fraud-on-the-market case such as

this, "all [P]laintiffs will have to prove the same misrepresentations and omissions, as well as their materiality and defendants' knowledge. Thus, it is obvious that common questions exist." *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989).

Accordingly, the requirements of Rule 23(a)(2) are satisfied.

### 3.   Plaintiffs' Claims Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a)(3) is satisfied where "plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims." *Kinney*, 2002 U.S. Dist. LEXIS 18628, at *13-*14 (citation omitted). *Adair v. Sorenson*, 134 F.R.D. 13, 17 (D. Mass. 1991); *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991) (citation omitted). Plaintiffs have met the typicality requirement of Fed. R. Civ. P. 23(a) (3), as their claims are typical of the claims of the absent Class Members. In general, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 78 (D. Mass. 2005). Plaintiffs, like the absent Class Members, purchased or otherwise acquired the publicly traded securities of divine during the Class Period at prices that were artificially inflated due to Defendants' material misrepresentations, and suffered losses as a result thereof. In addition, Plaintiffs' claims are based upon the same facts and legal theories as the rest of the Class.

Courts in this Circuit have repeatedly found the typicality requirement of Rule 23(a)(3) satisfied if Plaintiffs and the Class relied on the integrity of the market. *See Adair*, 134 F.R.D. at 17 ("[w]hen a case is brought under a fraud on the market theory, typicality is established by a showing that the putative plaintiff relied on the integrity of the market"); *Grace*, 128 F.R.D. at 168 ("Typicality is established by showing that the putative plaintiffs relied on the integrity of the

market. . . .  When a case is brought under a fraud on the market theory, reliance on any public material misrepresentations is presumed.") (citation omitted).

The typicality requirement of Rule 23(a)(3) is also satisfied here.

> ### 4.     Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

This Circuit has identified two basic guidelines for satisfying the adequacy test of Rule 23(a)(4): (i) there must be an absence of potential conflict between the named plaintiffs and the class members; and (ii) there must exist an assurance that plaintiffs' counsel is qualified, experienced, and able to vigorously conduct the litigation.  *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *Bank of Boston*, 762 F. Supp. at 1534; *Adair*, 134 F.R.D. at 18; *Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991); *Opiela v. Bruck,* 139 F.R.D. 257, 261 (D. Mass. 1990); *Tolan v. Computervision Corp.*, 696 F. Supp. 771, 780 (D. Mass. 1988).  Both prongs of the adequacy of representation test are satisfied here.

There are no conflicts between the Class Representatives and absent Class Members who purchased or otherwise acquired the publicly traded securities of divine, and whose claims are predicated upon the same course of conduct and legal theories.  Like other absent Class Members who have damages and recognized losses under the Plan of Allocation in this case, the Class Representatives purchased their divine shares, or exchanged shares for shares of divine as members of one of the SubClasses, and retained such shares through at least January 16, 2003.  Thus, the Class Representatives are adequate representatives for the Class.  Plaintiffs will fairly and adequately represent the interests of the Class.  First, their interests are perfectly aligned with the interests of the Class.  Like all Class Members, they purchased or otherwise acquired divine stock at prices that were inflated by Defendants' securities law violations, and the same wrongdoing that caused them damages also caused the damages suffered by the Class.

Furthermore, in determining whether the action will be vigorously prosecuted or defended, courts have stressed the skill and experience of counsel. *See Baffa v. Donaldson*, 222 F.3d 52, 60-61 (2d Cir. 2000); *In re TCW/DW N. Am. Gov't Income Trust Secs. Litig.*, 941 F. Supp. 326, 341 (S.D.N.Y. 1996). Plaintiffs in this Action have retained counsel with extensive experience litigating complex securities class actions. Plaintiffs and their counsel have demonstrated their willingness to represent the interests of all members of the Class by the extensive efforts devoted to the prosecution of this Action since its inception. Moreover, Lead Counsel for the Class and the other firms representing the Class include preeminent class action attorneys, who have qualified as lead counsel in many securities class actions. Plaintiffs' Counsel has a proven track record in the prosecution of class actions and have successfully litigated and tried many major class action cases. *See* Resumes of Plaintiffs' Counsel submitted herewith.

Accordingly, the adequacy requirement of Rule 23(a)(4) is met.

**B.    The Requirements of Rule 23(b)(3) Are Also Satisfied**

In addition to satisfying the requirements of Rule 23(a), a class must satisfy one of the elements of Rule 23(b). Plaintiffs here have moved for Class certification under Rule 23(b)(3), which requires that common questions of law or fact predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Here, Plaintiffs satisfy both requirements.

**1.    Common Questions of Law and Fact Predominate over Individual Questions**

In the discussion of Rule 23(a)(2) commonality above, Plaintiffs set forth some of the many common issues of fact and law in this case. It is well-established that in determining whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of

liability.  Indeed, "[w]here, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied."  *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003); *Relafen*, 218 F.R.D. at 345 (quoting same).  When common questions represent a significant aspect of a case and they can be resolved in a single action, class action status is appropriate.  *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, §1788 at 528 (1986).  The common questions, however, need not be dispositive of the entire action, because "predominate" as used in Fed. R. Civ. P. 23(b)(3) should not be equated with "determinative."  *See Smilow*, 323 F.3d at 39 ("Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class").  A single, central issue as to the defendant's conduct *vis a vis* class members can satisfy the predominance requirement.  *Payne*, 216 F.R.D. at 27.

With respect to the Class, common issues predominate over individual questions.  The litigation will be focused on whether Defendants' statements were false or misleading, whether Defendants acted with scienter, and whether Class Members suffered damages and how damages should be measured.  These issues of liability and damages are common for all Class Members.

This case illustrates the principle that the predominance requirement is "readily met" in many securities fraud actions.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The predominance requirement of Rule 23(b)(3) is satisfied.

### 2.    A Class Action Is Superior to Other Available Methods of Adjudication

The superiority of a class action in securities fraud cases, which generally involve numerous defrauded investors whose claims are individually not large enough to make separate actions economically feasible, is well recognized.  As the Court explained in *Randle*:

[I]n light of plaintiffs' allegations concerning the large number of outstanding [company] shares during the class period, the relatively small financial stake of class

> members who may have been injured and the likely geographical dispersion of class
> members, a class action is superior to other methods of adjudicating this controversy.

129 F.R.D. at 393. *See also Grace*, 128 F.R.D. at 171; *Priest*, 118 F.R.D. at 553-54. In addition,

even a handful of duplicative suits would needlessly burden the courts.

"The final hurdle that plaintiffs must clear under Rule 23 is the requirement to demonstrate

that 'a class action is a fair and efficient method of adjudicating the controversy and would be

superior to other methods.'" *Payne*, 216 F.R.D. at 29 (quoting *Mack v. Suffolk County*, 191 F.R.D.

16, 25 (D. Mass. 2000)). A finding by the Court that the proposed Class meets all of the other Rule

23 criteria strongly suggests that a class action is desirable as a matter of judicial economy, that

joinder is impracticable and that common issues predominate. *Id.*

Additionally, a class action is superior to other available methods for the fair and efficient

adjudication of this controversy because, absent a class action, this Court would be faced with the

task of potentially litigating numerous lawsuits:

> [T]he benefits to the large number of class members, many of whose claims are so
> small that their size does not provide the impetus to bring individual actions, clearly
> outweigh any problems which may arise in the management of the class action.
> Economy will undoubtedly be achieved. Not only economy which will benefit
> members of the class, but economy which will benefit the judicial system as well.

*Kirby*, 116 F.R.D. at 311 (quoting *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 100 F.R.D.

468, 471 (D. Mass. 1984)); *see also Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to

vindicate the claims of . . . groups of people whose individual claims would be too small to warrant

litigation."); *Amchem,* 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from

certification cases in which individual damages run high, the Advisory Committee had dominantly in

mind vindication of the rights of groups of people who individually would be without effective

strength to bring their opponents into court at all."); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344

(7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the

problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

Clearly, there will be no difficulties in the management of this case as a class action in view of the proposed Settlement. As the Supreme Court has explained: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. 591 at 620 (internal citation omitted).

## IV.    UNDER THE APPLICABLE STANDARDS, THE PROPOSED SETTLEMENT SHOULD BE APPROVED

### A.    Courts Favor Settlements, Particularly of Class Actions

Courts consistently favor the settlement of disputed claims. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Durrett v. Hous. Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *In re Viatron Computer Sys. Corp. Litig.*, 614 F.2d 11, 15 (1st Cir. 1980); *In re First Commodity Corp. Customer Accounts Litig.*, 119 F.R.D. 301, 313 (D. Mass. 1987). Settlement spares the litigants the uncertainty, delay, and expense of a trial, while simultaneously reducing the burden on judicial resources.

Nowhere is this policy more appropriate than in class actions. *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) (noting "overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 105 (D.R.I. 1996) ("The district court's discretion is circumscribed by the long-recognized policy of encouraging settlements.") (citation omitted); *First Commodity*, 119 F.R.D. at 313; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 740 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). "Settlement of the complex disputes

often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) (citation omitted).  Approval of a class action settlement is within the sound discretion of the trial court and will not be overturned absent clear abuse of that discretion.  *Greenspun*, 492 F.2d at 381; *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1044 (1st Cir. 1996) ("Great deference is given to the trial court.").

**B.     The Court Must Find that the Settlement Is Fair, Reasonable, and Adequate**

In deciding whether to approve a proposed settlement of a class action, the Court must conclude that the settlement is fair, reasonable, and adequate.  *See, e.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 7 (1st Cir. 1999); *Fleet/Norstar*, 935 F. Supp. at 105.

In evaluating a settlement, however, the Court should not engage in a trial on the merits.  *See Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981).  The settlement hearing should not become a trial or a rehearsal of the trial.  *See Fleet/Norstar*, 935 F. Supp. at 106 ("In passing on a settlement agreement, it is not appropriate to adjudicate the merits of the dispute.") (citation omitted).  Indeed, a full-blown trial would defeat the very purpose of a settlement: avoiding a sharply contested trial and unnecessary litigation.  *See Greenspun*, 492 F.2d at 381 ("A district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial."); *Duhaime,* 177 F.R.D. at 68; *First Commodity*, 119 F.R.D. at 314.  Thus, in determining whether to approve a class action settlement, "[i]t cannot be overemphasized that neither the trial court in approving the settlement nor [an appellate court] in reviewing that approval [has] the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir. 1975); *Lewis v. Newman*, 59

F.R.D. 525, 527 (S.D.N.Y. 1973).  Accordingly, judicial evaluation of a proposed settlement of a

class action involves a limited inquiry into whether the possible rewards of litigation, with its risks,

costs, and delays, are outweighed by the benefits of the settlement.  In *Detroit*, 495 F.2d at 462, the

Second Circuit, quoting *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971) (internal citation omitted),

stated:

> The court is only called upon to consider and weigh the nature of the claim, the
> possible defenses, the situation of the parties, and exercise business judgment in
> determining whether the proposed settlement is reasonable.

The *Detroit* decision also set forth the following non-exhaustive list of factors which a trial court

may consider in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; [and] (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

495 F.2d at 463 (citations omitted).  The nine factors are not exclusive and different factors may

predominate in different factual contexts.  *See Torrisi*, 8 F.3d at 1375-76.

Courts in this Circuit use a similar approach.  *See, e.g., Fleet/Norstar*, 935 F. Supp. at 105

("In determining whether a proposed settlement is fair, reasonable and adequate, courts consider the

merits and complexity of the claims, the circumstances of the settlement, the terms of the settlement,

and objections to the settlement."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass.

1999) ("This fairness determination is not based on a single inflexible litmus test but, instead,

reflects [the court's] studied review of a wide variety of factors bearing on the central question of

whether the settlement is reasonable in light of the uncertainty of litigation.") (citing *M. Berenson*

*Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 822-23 (D. Mass. 1987)).  An evaluation of

these factors, set forth below, establishes that the Settlement is fair, reasonable and adequate, and should be approved by the Court.

### C.     The Relevant Factors All Militate in Favor of Approving the Settlement

Accordingly, pertinent factors to be weighed in evaluating whether the Settlement is fair, reasonable, and adequate are the complexity and likely duration of the litigation, including the risks of maintaining the class action through the trial and establishing liability and damages; the reaction of the Class to the Settlement; whether the Settlement is the result of arm's-length negotiations by experienced counsel; the stage of the proceedings; the range of possible recovery; and the ability of Defendants to withstand a greater judgment.  A consideration of these factors weighs heavily in favor of final approval of the Settlement before the Court.

### 1.     The Complexity and Likely Duration of This Litigation Through Trial and Appeals Favors the Settlement

The delay inherent in continuing this complex litigation through trial and appeals is itself a factor weighing strongly in favor of the Settlement.  This Settlement provides the Class an immediate benefit without further delays.  Further discovery (including document and deposition discovery), summary judgment motions, and trial, with various pre-trial motions, and inevitable appeals, await all parties in the event this Settlement is not approved.  Clearly, approval of the Settlement will obviate the need for the trial and the resulting burden on the Court and further delay in payment to the Class. *See, e.g., Rolland*, 191 F.R.D. at 10; *First Commodity*, 119 F.R.D. at 314; *In re Baldwin-United Corp.,* 607 F. Supp. 1312, 1320 (S.D.N.Y. 1985).  Class Members will receive their settlement proceeds much sooner under the proposed Settlement than if the Action went to trial and through potentially lengthy appeals, particularly given that the Class could receive nothing at trial or upon appeal.

- 15 -

Moreover, all trials involve risks.  As demonstrated at length in the Joint Declaration, this case is no different.  The Settlement avoids such risks and uncertainties and provides the Class with a substantial benefit now.  The uncertainties of litigation are particularly acute in shareholder class actions.  Courts have long recognized that "[s]tockholder litigation is notably difficult and unpredictable."  *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971).  *See also Rubenstein v. Republic Nat'l Life Ins. Co.,* 74 F.R.D. 337, 347 (N.D. Tex. 1976) ("[s]tockholder litigation is notably difficult and unpredictable and in these circumstances the courts have displayed a healthy skepticism in the face of optimistic forecasts or large demands").

Here, although Plaintiffs were confident that a class would be certified, the parties engaged in settlement discussions at the time that Defendants' motion to dismiss Plaintiffs' SC and Plaintiffs' opposition to the motion was pending.  There was no guarantee Plaintiffs would be successful in opposing that motion, which would have effectively ended the case.  Moreover, Plaintiffs had not yet moved for Class certification.  In addition to facing an inevitable motion for summary judgment, there would have been a battle of experts as to the method for determining whether divine securities were artificially inflated during the relevant period; the amount of any such inflation; the extent that various facts alleged by Plaintiffs were materially false or misleading; the extent that various facts alleged by Plaintiffs influenced the trading price of divine securities during the relevant period; and whether such facts were material, false, misleading or otherwise actionable under the securities laws.

Specifically, one of Plaintiffs' biggest obstacles would have been proving liability for the portion of the Class Period when divine shares were significantly and artificially inflated.  Plaintiffs' claims would be relatively easier to prove later in the Class Period, when divine shares were already far lower and, thus, far less artificially inflated.  In addition to this problem, in light of the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ("*Dura*"), Defendants would

have raised numerous arguments concerning the extent of Plaintiffs' recoverable damages which, if successful, would limit the size of Plaintiffs' claims to the $0.23 per share decline at the end of the Class Period. Moreover, the fact that there are limited sources of recovery due to divine's bankruptcy, clearly weighs in favor of settlement. The Court in *In re Stockeryale, Inc.*, No. 1:05 CV 00177-SM, 2007 U.S. Dist. LEXIS 94004, at *10-*11 (D.N.H. Dec. 18, 2007), approved the fairness of a settlement where a Company that was still in the development stage had "limited resources" to pay a higher amount. Plaintiffs' recovery here is limited by the Company's Directors and Officer's Liability policies which totaled $30,000,000. These policies were "wasting" policies and less than $19 million remained at the time of Settlement. Importantly, there are two sets of claims competing for the remainder of this policy. One is the instant action which includes the Section 10(b) claims brought under the Securities Exchange Act of 1934 (the "Exchange Act") and the SubClass claims which were brought under the Securities Act of 1933 (the "Securities Act"). The other competing claim is that of the Trustee in the bankruptcy and adversary proceedings pursuant to Chapter 11 in the United States Bankruptcy Court in the District of Massachusetts, Eastern Division. The Trustee's demand at the time that the Stipulation of Settlement was entered into far exceeded the amount of insurance proceeds remaining at that time. In fact, the Bankruptcy Court's approval of the settlement between various Defendants and the Trustee, by which the Trustee's claims will be satisfied by a payment from the insurance proceeds, further substantiates Lead Counsel's judgment to settle this case on these terms and at this juncture. The Trustee also made a motion in the Bankruptcy Court to stay the instant action in order to protect the debtor's assets during the bankruptcy proceeding. That motion had been adjourned pending resolution of the Settlement. If not for the resolution of the Settlement, this Action may have been stayed until the adversary proceedings were resolved, leading to further exhaustion of the insurance proceeds as the result of

- 17 -

either a judgment or settlement in the Trustee's action in Bankruptcy Court or by defense costs in that action.

At trial, Plaintiffs would have had the difficult burden of proving with clear and convincing evidence that Defendants had knowingly, or at minimum, recklessly, made false and misleading statements to the investing public regarding divine's growth-by acquisition strategy and the Company's financial condition. If a fact-finder found that Plaintiffs were unable to meet such burdens, then the Class could have received nothing. Even had Plaintiffs prevailed at trial, there would likely have been an appeal from such a favorable verdict.

Given the prospects for a long and arduous trial and appeal process, as well as all of the substantial risks set forth above and in the Joint Declaration, as well as the expense involved in any complex litigation, settlement at this stage is highly beneficial to Class Members. *See First Commodity*, 119 F.R.D. at 314.

### 2.    The Reaction of the Class to the Settlement Favors Approval of the Settlement

The response of Class Members is an important factor in evaluating the fairness, reasonableness, and adequacy of the Settlement. *See Greenspun*, 492 F.2d at 380 ("The absence of any detailed opposition is a relevant, if not always reliable, factor in assessing the fairness of [a proposed settlement]."); *Fleet/Norstar*, 935 F. Supp. at 107 ("a small number of objectors should not interfere with the approval of an otherwise fair and reasonable settlement."); *Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34, 40 (D.P.R. 1993) ("Another indication of the fairness of a class action settlement is the lack of, or small number of, objections."). Also, "any prospective class member who received the class notice and failed to request exclusion from the class has judged retrospectively for himself that his interests have been adequately represented in the negotiation of the proposed settlement agreement." *M. Berenson Co.,* 671 F. Supp. at 824.

Here, no one has objected to the Settlement. Over 27,000 copies of the Notice were mailed to potential Class Members and a Summary Notice was published in *Investor's Business Daily*. The Notice advised members of the Class of their right to object to the Settlement. The deadline for mailing objections to the Settlement passed on June 2, 2008.

The Notice also advised Class Members of their right to exclude themselves from the Class by submitting a written request to the Claims Administrator postmarked no later than June 2, 2008. As described above, (*see* footnote 4 above) only three letters purporting to be requests for exclusions were received. Two of those requested exclusion because they stated that they did not trade shares of divine during the Class Period and are therefore not part of the Class. The third exclusion was made by an investor who has no recoverable damages because they sold their shares prior to any disclosure that caused a decline in the price of divine stock.

The overwhelmingly favorable response by the Class is powerful evidence that the Settlement is fair, reasonable, and adequate, particularly given that the Class includes sophisticated institutional investors.

### 3.    The Settlement Is the Result of Arm's-Length Negotiations by Experienced Counsel

The Settlement is the product of arm's-length negotiations by highly experienced counsel. In lieu of a more extended inquiry into the claims asserted and result achieved by plaintiffs, courts have examined the "negotiating process by which the settlement was reached." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982). Courts have focused on whether the settlement was achieved through "arm's-length negotiations" by counsel who has "the experience and ability . . . necessary to effective representation of the class's interests." *Id. See also Fleet/Norstar*, 935 F. Supp. at 106 (considering fact that settlement was reached through "arm's-length negotiations" in finding that settlement was fair, reasonable and adequate); *City P'ship Co.*, 100 F.3d at 1043 (noting that, in

- 19 -

addition to other factors, "when . . . the parties have bargained at arms-length, there is a presumption in favor of the settlement") (citations omitted); *M. Berenson Co.*, 671 F. Supp. at 822 (same).

The Settlement before the Court was made at arm's-length and was reached only after a series of negotiations over many months between Plaintiffs' and Defendants' counsel and the participation in two mediation sessions with the Honorable Layn Phillips (Ret.), United States District Court Judge for the Western District of Oklahoma on June 29, 2005 and November 17, 2005. In January 2006, a settlement of $6,500,000 plus interest was eventually reached to resolve the action. On February 2, 2006, counsel executed a Memorandum of Understanding. On May 23, 2006, Plaintiffs filed a Memorandum in Support of Preliminary Approval of Proposed Settlement. On July 21, 2006, Plaintiffs' filed a Supplemental Memorandum in Support of Preliminary Approval of Proposed Settlement, as requested by the Court. On August 25, 2006, the Court entered an Order approving the Settlement and providing for Notice. On March 16, 2007, the United States Bankruptcy Court entered an Order approving the use of proceeds of divine's Directors and Officers insurance policies to fund the Settlement. Subsequently, the Trustees in bankruptcy appealed the Order of the Bankruptcy Court and, after numerous discussions with the Trustees, Plaintiffs agreed to reduce by $200,000 the amount by which they would agree to settle the claims of the Class in exchange for the Trustees' agreement to withdraw their appeal of the Order of the Bankruptcy Court that had allowed the use of the insurance policy proceeds to fund the Settlement  Therefore, even after the major terms of the Settlement had been reached, many additional months were required to iron out the remaining terms of the Settlement and enter into the Amended Stipulation of Settlement. Numerous drafts of the Amended Stipulation of Settlement and accompanying exhibits were circulated among the parties for comments over the course of many months until an agreed-to form of the Stipulation and exhibits were ultimately filed with the Court.

In assessing the fairness of a proposed settlement, courts have given weight to the views of experienced counsel.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975).  Here, Plaintiffs' Co-Lead Counsel have many years of experience litigating securities fraud class actions and have negotiated numerous other class action settlements which have been approved by courts throughout the country and in this District in particular.  They urge approval of this Settlement which they believe is fair, reasonable, adequate, properly balances the risks of continued lengthy litigation against the benefits to be received, and represents the best overall resolution for members of the Class.

### 4.   The Stage of the Proceedings Favors the Settlement

Courts should also consider the stage of the proceedings and the amount of discovery in evaluating a proposed settlement.  The purpose of considering the stage of the proceedings is to ensure that the factual record is sufficient to support an informed judgment as to the adequacy of the settlement proposal.  *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).

Here, although formal discovery had not taken place due to the mandatory discovery stay imposed by the PSLRA, Plaintiffs' Counsel could clearly make an informed judgment regarding the proposed Settlement.  Although the amount of discovery completed is a factor that the courts consider in determining the fairness, reasonableness and adequacy of a settlement, "in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).  Because much of the point of settling is to avoid litigation expenses such as full discovery, "it would be inconsistent with the salutary purpose of settlement, to find that extensive pre-trial discovery is a prerequisite to approval

of a settlement." *In re Bausch & Lomb Sec. Litig.*, 183 F.R.D. 78, 81 (W.D.N.Y. 1998) (citation omitted). In order to approve a settlement, a court "need not find that the parties have engaged in extensive discovery." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 353 (S.D.N.Y. 2002) (citing *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001)).

Plaintiffs' Counsel undertook an extensive investigation of the underlying facts which included a review of divine's regulatory filings and reports, securities analysts' reports and advisories about the Company, the complaint filed by the Examiner in the related Bankruptcy proceeding, press releases and other public statements issued by the Company, as well as interviews with former employees of divine. Plaintiffs have also consulted extensively with experts on the issue of damages and loss causation. Plaintiffs' investigation allowed them to assess carefully the risks they would face in continuing to litigate the case through summary judgment and trial. In short, Plaintiffs' Counsel's decision to enter into this Settlement was made with knowledge of the facts and circumstances underlying the claims and the strengths and weaknesses of those claims.

In determining to settle the Action, Plaintiffs' Counsel evaluated the strengths and weaknesses of Plaintiffs' claims in the Action and took into account the substantial expense and length of time necessary to prosecute the action through discovery, summary judgment, trial, post-trial motions, and likely appeals, taking into consideration the significant uncertainties in predicting the outcome of this complex litigation. Thus, Plaintiffs had the benefit of a clear picture of the strengths of their own case and Defendants' defenses, both legal and factual.

### 5.    The Probability of Plaintiffs' Success on the Merits and in Proving Damages Favors the Settlement

Recognizing the uncertainty of litigation, courts have held that to justify a proposed settlement, a plaintiff must establish only that, all things considered, "it is prudent to eliminate the

risks of litigation to achieve specific certainty though admittedly it might be considerably less (or more) than were the case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960).

Plaintiffs faced numerous significant risks to proving liability and establishing damages if they had proceeded with the litigation.  To succeed on the claims under Section 10(b) of the Exchange Act, Plaintiffs would have had to establish, *inter alia,* that Defendants were responsible for omissions or misstatements, that such misstatements and omissions were material, that they caused damage to the Class, and that Defendants acted with the requisite state of mind or scienter (actual knowledge or reckless disregard for the truth).  While Plaintiffs' Lead Counsel believes that Plaintiffs have a strong case, they recognize that their burden is a heavy one and that there are substantial risks involved.  The risks and uncertainties of continued litigation are discussed at length in the Joint Declaration.

As to the claims under the Exchange Act, Plaintiffs would have had to establish either Defendants' intentional misconduct or recklessness,[6] not merely negligence or mismanagement. There is no assurance that Plaintiffs would have succeeded in establishing those required elements of scienter as to each Defendant at trial.  For both the claims under the Exchange Act and those under the Securities Act, Plaintiffs needed to establish that Defendants had publicly made materially false and misleading statements.  It is possible the Court would have found that no such statements were in the SC even though there may have been ample evidence demonstrating that the Company was

---

[6]     *See, e.g., Greebel v. FTP Software, Inc.*, 194 F.3d 185, 199 (1st Cir. 1999) (discussing the high standard for recklessness, which, in the securities context, "comes closer to being a lesser form of intent than merely a greater degree of ordinary negligence") (quotations omitted).

internally experiencing great problems. Many of the statements were not actionable. *See* Joint Declaration at 53-58.

Since almost the entire decline in the value of divine shares took place before the end of the Class Period, under the Supreme Court's seminal decision in *Dura*, *there would have been substantial problems proving significant damages during the entire length of the Class Period.* Defendants: denied, and continue to deny, Plaintiffs' allegations of liability; deny they committed any violation of the securities laws; and deny Plaintiffs or the Class were damaged.

In sum, successful prosecution of this case through summary judgment, trial, and appeals was anything but a foregone conclusion. Plaintiffs faced a heavy burden of proof and there was a substantial risk that Plaintiffs would recover considerably less than their full damages, or even nothing at all.

### 6. The Range of Possible Recovery and the Ability of Defendants to Withstand a Greater Judgment Favors the Settlement

The determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement. . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Warner Commc'ns*, 618 F. Supp. at 745. Courts routinely approve proposed settlements even though the benefits amount to significantly less than a full recovery. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1391, 1417 (D. Ariz. 1989), *aff'd, Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1292 (9th Cir. 1992). "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Detroit*, 495 F.2d at 455. *Accord Weinberger*, 698 F.2d at 65 (Second Circuit upheld settlement which amounted to "only a negligible percentage of the losses suffered by the class").

Here, in light of all the attendant risks and uncertainties, the Settlement represents an excellent recovery. Plaintiffs faced a multitude of significant challenges in continuing to prosecute this case through summary judgment, trial, and appeals. Plaintiffs submit that the $6,300,000 cash Settlement, plus interest, is a significant portion of even the maximum recovery that Plaintiffs could realistically hope to obtain at trial, and is thus fair, reasonable, and adequate.

Estimated damages for the Exchange Act claims for the entire Class Period were approximately $52 million.[7] Thus the Settlement of $6.3 million (not including any accrued interest) provides for approximately 12% of the estimated maximum recoverable damages and roughly 6% of the Securities Act Damages.

Prior to April 2002 both the Securities Act and Exchange Act claims were very weak. *See* Joint Declaration, ¶¶53-58. More significantly, estimated damages from April 1, 2002 until the end of the Class Period, the period of time when Lead Plaintiffs believe they had strong and sustainable claims, were only $4.7 million for the Exchange Act claims and approximately $8.3 million for the Securities Act claims, or a total of $13 million. The Settlement of $6.3 million thus represents

---

[7]      In addition to damages for the Exchange Act claims, 84% of the damages for the claims under the Securities Act or $72 million, were concentrated in the eShare, Data Return and Delano offerings. The only statements Plaintiffs alleged were false and materially misleading in these prospectuses described divine's overall growth strategy. Defendants argued that these statements would only have been misleading if, in fact, divine had abandoned such a strategy which Plaintiffs do not believe could have been established. Thus, objectively, Plaintiffs believed these claims were not sustainable.

In addition, defendants had significant Statute of Limitations defenses since divine shares began to radically drop in May 2002 and Plaintiffs brought their Securities Acts claims more than one year later in July 2003. Thus there was a substantial risk that all of the Securities Act claims could have been dismissed on procedural grounds before even getting to the issue of whether actionable claims were plead.

nearly half of these damages that Lead Plaintiffs believe constituted the sustainable core claims of this lawsuit.

Moreover, the Settlement far exceeds median percentage recoveries of estimated damages through 2006 and for 2007 for recent securities class actions as a whole, 3.6% and 2.9%, respectively.  Cornerstone Research, Securities Class Action Settlements 2007 Review and Analysis, at 6 (2007); *see also In re Heritage Bond Litig. v. U.S. Trust Co. of Texas*, No. 02-ML-1475 (RCx), 2005 U.S. LEXIS 13627, at *27-*28 (C.D. Cal. June 10, 2005) (noting median recoveries of 2.3%, 2.8%, and 2.7% in 2004, 2003 and 2002, respectively); *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *35 (S.D.N.Y. Nov. 7, 2007) (noting median recoveries of 3.6% through 2005 and 2.4% for 2006 (citing Cornerstone Research)).  In reality, the recovery for Class Members who actually file claims will be even greater.  The recovery will increase significantly for those who file proof of claims if the proof of claim response is only a percentage of the eligible shares.

## V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Plaintiffs respectfully submit that the Plan of Allocation of the Net Settlement Fund also should be approved as fair and equitable, as it provides a fair and practical method to distribute the Net Settlement Fund among Class Members.  The Plan, which is described in the Joint Declaration, provides that Class Members who submit acceptable Proof of Claim forms, postmarked on or before July 9, 2008, evidencing a loss in their transactions in divine common stock during the Class Period, are entitled to a recovery.  Claimants will share the Net Settlement Fund, after payment of taxes, costs, and approved fees, pro rata in proportion to their "Recognized Claims."  The Plan of Allocation is designed to promote the ease of claims administration and thereby reduce costs to the Class.  The Plan of Allocation is similar to numerous other such plans utilized in other securities

class action cases, and was fully described in the Notice.  No Class Member has objected to the Plan of Allocation.

A plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P. 23 must be fair and reasonable.  *See Class Plaintiffs*, 955 F.2d at 1284-85.  District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.  *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *aff'd* 41 F.3d 402 (8th Cir. 1994); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

The objective of the Plan of Allocation is to provide an equitable and practical basis upon which to distribute the Net Settlement Fund among eligible Class Members.  Here, the Plan of Allocation is based upon Plaintiffs' Counsel's understanding of the alleged fraud and misleading misrepresentation and their assessment of the relative strengths of Class Members' claims.  The Plan of Allocation will fairly distribute the available proceeds among Class Members who submit valid claims.  The decisions cited above recognize that the goal of an equitable plan is fairness to the Class, taking into consideration the strength of claims based on available facts and evidence, as well as the size of the fund to be distributed.  The Plan of Allocation in this case is based on such principles, and it falls within the mainstream of allocation plans routinely approved.  The information required from Class Members is easily obtainable and is easily verifiable by the Claims Administrator.  The Plan of Allocation is therefore a fair and equitable method of allocating the proceeds of this Settlement among Class Members.

## VI.    CONCLUSION

For all the foregoing reasons and those set forth in the Joint Declaration, Plaintiffs respectfully request that the Court issue final approval of the proposed Settlement as fair, reasonable, and adequate.

DATED:  June 17, 2008

Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
ELLEN GUSIKOFF-STEWART


*/s/ Ellen Gusikoff-Stewart*
ELLEN GUSIKOFF-STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@csgrr.com

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@csgrr.com
drosenfeld@csgrr.com

STULL STULL & BRODY
HOWARD LONGMAN
6 East 45th Street
New York, New York  10017
Telephone:  212/687-7230
212/490-2022 (fax)
www.ssbny@aol.com

*Lead Counsel for Plaintiffs and the Class*

- 28 -

GILMAN AND PASTOR LLP
DAVID PASTOR (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906
Tel.: 781/231-7850
Fax:  781/231-7840
Dpastor@Gilmanpastor.com

*Liaison Counsel for Plaintiffs and the Class*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 17, 2008.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail: EllenG@csgrr.com

# Mailing Information for a Case 1:04-cv-12263-PBS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Bruce S. Barnett**
  bruce.barnett@dlapiper.com,janine.medina@dlapiper.com

- **Thomas David Brooks**
  tdbrooks@sperling-law.com

- **Joel G. Chefitz**
  jchefitz@mwe.com

- **Christopher J. Panos, Trustee of the Sabine, Inc. Liquidating Trust**
  jkoltun@craigmacauley.com

- **Joseph Edward Collins**
  joseph.collins@dlapiper.com

- **Mayeti Gametchu**
  mgametchu@wolfblock.com,mahall@wolfblock.com

- **Ellen Anne Gusikoff Stewart**
  elleng@csgrr.com,elleng@csgrr.com

- **James E. Hanlon , Jr**
  hanlonj@howrey.com

- **Howard T. Longman**
  tsvi@aol.com

- **Kevin J. O'Connor**
  koconnor@wolfblock.com,mahall@wolfblock.com

- **David Pastor**
  dpastor@gilmanpastor.com,rkaloutas@gilmanpastor.com,sdurgin@gilmanpastor.com

- **Stephanie R. Pratt**
  spratt@segalroitman.com,jstein@segalroitman.com

- **David A. Rosenfeld**
  drosenfeld@csgrr.com

- **Samuel H. Rudman**
  SRudman@csgrr.com

- **Anne R. Sills**

asills@segalroitman.com,sgillin@segalroitman.com,tsullivan@segalroitman.com

- **Bruce S. Sperling**
  bss@sperling-law.com

- **Mary T. Sullivan**
  msullivan@segalroitman.com,jstein@segalroitman.com,sgillin@segalroitman.com

- **Marc A. Topaz**
  ecf_filings@sbtklaw.com

- **Marc M. Umeda**
  notice@ruflaw.com,zimmer@ruflaw.com,umeda@ruflaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Guri Ademi**
Ademi & O'Reilly
3620 East Layton
Cudahy, WI 53110

**Shpetim Ademi**
Ademi & O'Reilly
3620 East Layton
Cudahy, WI 53110

**Celiza Patricia Braganca**
Sperling & Slater
55 West Monroe Street
Suite 3200
Chicago, IL 60603

**Michael A. Duffy**
Kirkland &Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

**Eugene J. Frett**
Sperling & Slater
55 West Monroe Street
Suite 3200
Chicago, IL 60603

**John A.D. Gilmore**
DLA Piper Rudnick Gray Cary US LLP
One International Place, 21st Floor
100 Oliver Street
Boston, MA 02110-2600

**John F. Hartmann**
Kirkland & Ellis LLP
200 East Randolph Drive

Chicago, IL 60601

**Bruce C. Howard**
Law Offices of Robert D. Allison
122 South Michigan Avenue 1850
Chicago, IL 60603

**Douglas Warren Hyman**
Piper Rudnick LLP
203 North LaSalle Street
#1900
Chicago, IL 60601-1293

**Samuel Bayard Isaacson**
Piper Rudnick LLP
203 North LaSalle Street
#1900
Chicago, IL 60601-1293

**Daniel J. Lyne**
Hanify & King
Professional Corporation
One Beacon Street
Boston, MA 02108-3107

**Marvin Allen Miller**
Miller Faucher and Cafferty, LLP
30 North LaSalle Street
Suite 3200
Chicago, IL 60602

**Christopher B. Sanchez**
Miller Faucher and Cafferty, LLP
30 North LaSalle Street
Suite 3200
Chicago, IL 60602

**Patrick J. Sherlock**
Beigel, Schy, Lasky, Cohen, Rifkind & Hennessey
11 South LaSalle
Suite 1600
Chicago, IL 60606

**Jennifer Winter Sprengel**
Miller Faucher and Cafferty, LLP
30 North LaSalle Street
Suite 3200
Chicago, IL 60602

**Lawrence A. Wojcik**
Piper Rudnick Gray Cary US LLP
203 N. LaSalle
Suite 1800
Chicago, IL 60601-1293