UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHARON BOBBITT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 04-12263-PBS |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| ANDREW J. FILIPOWSKI, et al., | ) ) | |
| Defendants. | ) ) | |
| JAMES F. HOWARD, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 06-11072-PBS |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| ANDREW J. FILIPOWSKI, et al., | ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEY FEES AND EXPENSES

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   THE REQUESTED FEE AND EXPENSE AWARD IS FAIR AND
REASONABLE ...................................................................................................5

    A.    The Common Fund Doctrine ....................................................................5

    B.    The First Circuit Has Expressed a Preference for the Percentage of Fund
Method in Awarding Fees in Common Fund Cases ..................................6

    C.    The Requested Thirty Percent Fee Award Is Well Within the Applicable
Range of Percentage of Fund Awards ......................................................8

    D.    The Relevant Factors Support Plaintiffs' Counsel's Fee Request .........10

        1.    The Amount of the Recovery.......................................................10

        2.    The Skill and Efficiency of Counsel............................................11

        3.    The Complexity of the Litigation and the Significant Obstacles to
Recovery .....................................................................................12

        4.    The Risk of Non-Payment ..........................................................13

        5.    Public Policy Favors the Requested Fee ......................................13

    E.    The Reaction of the Class Favors the Requested Fee ............................14

    F.    The Fee Request Is Also Fully Justified Under the Lodestar/Multiplier
Approach.................................................................................................14

    G.    The Expenses Incurred by Plaintiffs' Counsel Were Reasonable .........16

III.   CONCLUSION.................................................................................................17

# TABLE OF AUTHORITIES

Page

## CASES

*Adams v. Standard Knitting Mills, Inc.*,
    No. 8052, 1978 U.S. Dist. LEXIS 20317
    (E.D. Tenn. Jan. 6, 1978) ...................................................................................................9

*Baron v. Commercial & Indus. Bank*,
    [1979-1980 Transfer Binder]
    Fed. Sec. L. Rep. (CCH) ¶97,132
    (S.D.N.Y. Oct. 3, 1979) ....................................................................................................9

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ..........................................................................................................5

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
    480 F. Supp. 1195 (S.D.N.Y. 1979),
    *aff'd*, 622 F.2d 1106 (2d Cir. 1980) ................................................................................9

*Blum v. Stenson*,
    465 U.S. 886 (1984) .......................................................................................................6, 8

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ..........................................................................................................5

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ..........................................................................................7

*Chalverus v. Pegasystems, Inc.*,
    No. 97-12570-WGY, slip op.
    (D. Mass. Dec. 19, 2000) ..................................................................................................9

*City Nat'l Bank v. Am. Commonwealth Fin. Corp.*,
    657 F. Supp. 817 (W.D.N.C. 1987) ..................................................................................9

*Conley v. Sears, Roebuck & Co.*,
    222 B.R. 181 (D. Mass. 1998) ........................................................................................15

*Cosgrove v. Sullivan*,
    759 F. Supp. 166 (S.D.N.Y. 1991) .................................................................................15

*Deckler v. Ionics, Inc.*,
    No. 03-CV-10393-WGY, slip op.
    (D. Mass. Apr. 4, 2005) ....................................................................................................9

**Page**

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005)......................................................................................................10

*Edmonds v. United States,*
    658 F. Supp. 1126 (D.S.C. 1987)..................................................................................11

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185 (1976)......................................................................................................12

*Ezra Charitable Trust v. Tyco Int'l, Ltd.,*
    466 F.3d 1 (1st Cir. 2006)............................................................................................12

*Florin v. NationsBank, N.A.,*
    34 F.3d 560 (7th Cir. 1994) .........................................................................................15

*Furtado v. Bishop,*
    635 F.2d 915 (1st Cir. 1980) .........................................................................................8

*Gunter v. Ridgewood Energy Corp.,*
    223 F.3d 190 (3d Cir. 2000).........................................................................................11

*Hwang v. Smith Corona Corp.,*
    No. B 89-450 (TFGD), slip op.
    (D. Conn. Mar. 12, 1992)...............................................................................................9

*In re Ampicillin Antitrust Litig.,*
    526 F. Supp. 494 (D.D.C. 1981)....................................................................................9

*In re AremisSoft Corp. Sec. Litig.,*
    210 F.R.D. 109 (D.N.J. 2002).......................................................................................14

*In re Bay Fin. Corp. Sec. Litig.,*
    No. 89-2377-WD, slip op.
    (D. Mass. Nov. 4, 1996).................................................................................................9

*In re Biopure Corp. Sec. Litig.,*
    No. 03-12628-NG, slip op.
    (D. Mass. Sept. 24, 2007) ..............................................................................................9

*In re Charter Commc'ns, Inc., Sec. Litig.,*
    No. 1506, 2005 U.S. Dist. LEXIS 14772
    (E.D. Mo. June 30, 2005)..............................................................................................12

**Page**

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...............................................................8, 15, 16

*In re Copley Pharm., Inc. Sec. Litig.*,
    No. 94-11897-WGY, slip op.
    (D. Mass. Feb. 8, 1996)........................................................................9

*In re Corel Corp. Sec. Litig.*,
    293 F. Supp. 2d 484 (E.D. Pa. 2003) ............................................................12

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) .........................................................9

*In re Employee Benefit Plans Sec. Litig.*,
    No. 3-92-708, 1993 U.S. Dist. LEXIS 21226
    (D. Minn. June 2, 1993)........................................................................9

*In re Fidelity/Micron Sec. Litig.*,
    167 F.3d 735 (1st Cir. 1999) ...............................................................16

*In re Franklin Nat'l Bank Sec. Litig.*,
    [1980 Transfer Binder]
    Fed. Sec. L. Rep. (CCH) ¶97,571
    (E.D.N.Y. June 24, 1980) .....................................................................9

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
    02-ML-1475-DT (RCx), 2005 U.S. Dist. LEXIS 13627
    (C.D. Cal. June 10, 2005) ...................................................................11

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)............................................................12

*In re M.D.C. Holdings Sec. Litig.*,
    No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488
    (S.D. Cal. Aug. 30, 1990) ...................................................................14

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................15

*In re Picturetel Corp. Sec. Litig.*,
    No. 97-12135-DPW, slip op.
    (D. Mass. Nov. 4, 1999).......................................................................9

**Page**

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005)......................................................................6, 9, 10, 14

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) .................................................................15

*In re RJR Nabisco Sec. Litig.*,
No. MDL 818, 1992 U.S. Dist. LEXIS 12702
(S.D.N.Y. Aug. 24, 1992) ..................................................................................15

*In re Segue Software, Inc.*,
No. 99-10891-RGS, slip op.
(D. Mass. July 31, 2001) .....................................................................................9

*In re Sequoia Sys. Sec. Litig.*,
[1993-1994 Transfer Binder]
Fed. Sec. L. Rep. (CCH) ¶98,089
(D. Mass. Sept. 10, 1993) ........................................................................8, 14, 16

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003),
*aff'd sub nom. Wal-Mart Stores, Inc., v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)..................................................................................11

*In re Zoll Med. Corp. Sec. Litig.*,
No. 94-11579-NG, slip op.
(D. Mass. Oct. 5, 1998) ........................................................................................9

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964)...............................................................................................5

*Kurzweil v. Philip Morris Cos.*,
No. 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378
(S.D.N.Y. Nov. 30, 1999) ...................................................................................16

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................13, 14

*Mashburn v. Nat'l Healthcare, Inc.*,
684 F. Supp. 679 (M.D. Ala. 1988) ......................................................................5

*McKenzie Constr., Inc. v. Maynard*,
758 F.2d 97 (3d Cir. 1985).................................................................................14

**Page**

*Missouri v. Jenkins,*
491 U.S. 274 (1989)...........................................................................................8, 15

*Morton v. Kurzweil Applied Intelligence, Inc.,*
No. 94-10829-REK, slip op. (D. Mass. Feb. 4, 1998) .........................................9

*Nilsen v. York County,*
400 F. Supp. 2d 266 (D. Me. 2005) ....................................................................6

*Ressler v. Jacobson,*
149 F.R.D. 651 (M.D. Fla. 1992)....................................................................6, 14

*Swedish Hosp. Corp. v. Shalala,*
1 F.3d 1261 (D.C. Cir. 1993) ..............................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
___ U.S. ___, 127 S. Ct. 2499 (2007)............................................................5, 11

*Trustees v. Greenough,*
105 U.S. 527 (1882)............................................................................................5

*Weiss v. Mercedes-Benz of N. Am.,*
899 F. Supp. 1297 (D.N.J. 1995) .......................................................................15

*Wilensky v. Digital Equip. Corp.,*
No. 94-10752-JLT, slip op.
(D. Mass. July 11, 2001)......................................................................................9

*Zeid v. Open Env't Corp.,*
No. 96-12466-EFH, slip op.
(D. Mass. June 24, 1999) .....................................................................................9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(6) ........................................................................................................8

**SECONDARY AUTHORITIES**

Federal Judicial Center, *Awarding Attorneys' Fees and
Managing Fee Litigation* (1994)...........................................................................6

Third Circuit Task Force, *Court Awarded Attorney Fees*
108 F.R.D. 237 (Oct. 8, 1985) ............................................................................7

## I.    INTRODUCTION

Plaintiffs' Counsel respectfully submit this memorandum in support of their application for an award of attorney fees in the amount of 30% of the Settlement Fund plus litigation expenses of $451,283.94, plus interest on both amounts.  Through their efforts, Plaintiffs' Counsel have obtained an outstanding recovery for the Class of $6,300,000 (plus interest) in cash, in a settlement (the "Settlement") embodied in the Amended Stipulation of Settlement dated as of March 20, 2008 (the "Amended Stipulation").  This application is consistent with recent fee awards in comparable settlements, and reasonably and adequately compensates counsel for the significant risks undertaken, the work performed and the result obtained, and should be approved by the Court.

In accordance with the Amended Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") entered by this Court on April 16, 2008, over 29,000 copies of the Notice of Pendency and Proposed Settlement of Class Action, Motion for Attorney Fees and Settlement Fairness Hearing (the "Notice") and the Proof of Claim and Release form ("Proof of Claim") have been mailed to potential Class Members, brokers, banks and other nominees.  *See* paragraphs 3-9 of the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Pendency and Proposed Settlement of Class Action, Motion for Attorney Fees and Settlement Fairness Hearing, and the Proof of Claim and Release Form and B) Publication of the Summary Notice, submitted herewith.  The Notice and Proof of Claim were also posted on the Claims Administrator's website.[1]  The Notice advised Class Members that Plaintiffs' Counsel would apply for an award of attorney fees not to exceed 33% of the Settlement Fund and expenses not to exceed $425,000.  The Notice further provided all Class Members with the opportunity to be heard, to opt

---

[1]    In addition, a summary notice was published on May 6, 2008, in the national edition of *Investor's Business Daily* as directed in the Preliminary Approval Order.

out of the Class, or to object to the Settlement. As of the filing of this application, the objection deadline has passed, and not a single objection to the fee and expense request has been received. In light of the extensive Court-approved notice program, the fact that there have been no objections to the fee and expense application should guide the Court's conclusion that the requested fee is fair and reasonable.

Given the significant risk of succeeding at trial or on any subsequent appeals, divine's bankruptcy and the competing claims to a dwindling source of recovery, as well as the vigorous defense to Plaintiffs' claims mounted by Defendants, especially with respect to scienter, falsity and loss causation, and the difficulties, generally, in proving liability and damages in a complex securities fraud action, it is respectfully submitted that the recovery of $6,300,000, plus interest, is an excellent result under the circumstances and justifies the request for an award of attorney fees and expenses in this action. The fee award is also justified by the fact that Plaintiffs' Counsel have prosecuted this action vigorously against Defendants solely on a contingent fee basis and without any compensation for the time and disbursements expended on the case.

As described more fully in the Joint Declaration of Plaintiffs' Counsel in Support of Final Approval of Class Action Settlement and Application for Award of Attorney's Fees and Expenses, by any measure, the Settlement obtained in this case is an outstanding result for Class Members, and justifies the requested fee. In order to avoid repetition, petitioners incorporate that detailed discussion herein.

During the course of this litigation, Plaintiffs' Counsel:

1.      Conducted a preliminary investigation on behalf of various plaintiffs and other divine shareholders to determine whether there was a cause of action against divine and certain of its officers and directors;

2.      Prepared and filed the initial complaint as well as an amended complaint based on the review and analysis of various offerings made by divine for other companies during the Class Period which resulted in the pleading of claims brought under the Securities Act of 1933 (the "Securities Act") in addition to the initial claims brought under the Securities Exchange Act of 1934 (the "Exchange Act") and subsequently litigated a number of issues with respect to the proper forum for this litigation;

3.      Communicated with members of the Class concerning the initiation and prosecution of the litigation and concerning their possible right to apply to become lead plaintiffs;

4.      In preparation for filing an amended complaint, Plaintiffs' Counsel conducted further investigation, including the hiring of a private investigator and the identification, location and interview of witnesses (consisting primarily of former divine employees), in addition to examining publicly available records such as divine's public statements and filings with the Securities and Exchange Commission, news stories and analysts' reports;

5.      Opposed Defendants Filipowski's and Cullinane's motion to dismiss in the United States District Court for the Northern District of Illinois;

6.      Briefed the issues raised by Judge Der-Yeghiayan regarding the proper forum for this litigation;

7.      Following the transfer of the litigation to this Court, and with the assistance of in-house forensic accountants and other independent investigators, drafted and filed the highly detailed Second Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), which was filed in this Court on March 8, 2005;

8.      Researched and drafted extensive and complex opposition to Defendants' motion to dismiss the Complaint, which motion was pending when the parties initiated mediation;

9.      Consulted extensively with bankruptcy counsel and assisted them in litigating the numerous motions pursued in the Bankruptcy Court, such as opposing motions to stay and filing and arguing a motion for approval of the use of insurance policy proceeds to fund a settlement, and with causation and damage experts;

10.     Prepared for and participated in settlement negotiations with Defendants' counsel, including two settlement mediations before the Honorable Layn R. Phillips (Ret.); and

11.     Negotiated the terms of the Settlement papers presented to the Court, and negotiated a favorable settlement on behalf of the Class of divine's Bankruptcy Trustee's appeal of the Bankruptcy Court's order approving the use of the proceeds of the directors' and officers' liability policies to fund the instant Settlement.

This excellent result would not have been possible without the tenacious and skillful efforts of Plaintiffs' Counsel.  Despite the formidable opposition presented by Defendants and the discovery stay mandated by the Private Securities Litigation Reform Act of 1995 ("PSLRA") pending resolution of Defendants' motion to dismiss the Complaint, as well as the difficulties posed by simultaneously litigating the case here and in the Bankruptcy Court, Plaintiffs' Counsel sufficiently developed this case and pressed Defendants into a substantial settlement, and then continued to pursue the settlement in the Bankruptcy Court.  Plaintiffs' Counsel's skill and diligence in prosecuting this case, coupled with their willingness to take this case to trial and significantly risk their significant investment in time and expenses, merit the requested fee.  Similar (if not higher) percentages have regularly been awarded in cases throughout this Circuit and elsewhere.

## II.    THE REQUESTED FEE AND EXPENSE AWARD IS FAIR AND REASONABLE

### A.    The Common Fund Doctrine

For over a century, the Supreme Court has recognized the "common fund" exception to the general rule that a litigant bears his or her own attorneys' fees. *Trustees v. Greenough*, 105 U.S. 527 (1882). The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. . . .  Jurisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

The common fund doctrine both prevents unjust enrichment and encourages counsel to protect the rights of those who have very small claims. The Supreme Court has emphasized that private actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [Securities and Exchange] Commission action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ___, 127 S. Ct. 2499 (2007).

Federal courts have therefore long recognized that fee awards in successful cases, such as the instant one, encourage the prosecution of actions on behalf of other individuals with valid claims, and thereby promote private enforcement of, and compliance with, important areas of federal and state law, including the federal securities laws. *See, e.g.*, *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) ("[C]ourts also have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce the securities laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to

complex, time-consuming cases for which they may never be paid."); *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992) ("Attorneys who bring class actions are acting as 'private attorneys general' and are vital to the enforcement of the securities laws. Accordingly, public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to ***bring*** additional such actions.") (emphasis in original).

In complex securities class actions, competent counsel for plaintiffs can be retained only on a contingent basis. Consequently, a large segment of the public would be denied a remedy for violations of the federal securities laws if fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the serious risks undertaken, and the delay before any compensation is received.

### B.    The First Circuit Has Expressed a Preference for the Percentage of Fund Method in Awarding Fees in Common Fund Cases

Courts generally favor awarding fees from a common fund based upon the percentage-of-the-fund method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995) ("*Thirteen Appeals*") (citing Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, 63-64 (1994)). This is also true in this Circuit. *See Nilsen v. York County*, 400 F. Supp. 2d 266, 270 (D. Me. 2005) ("In the First Circuit, courts have discretion to award fees from a common fund 'either on a percentage of the fund basis or by fashioning a lodestar.'") (citation omitted). "As between the two methods, the First Circuit has noted that the percentage-of-funds method is the prevailing practice, and that it may have distinct advantages over the lodestar approach." *Id*. at 270-71. *See also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 78 (D. Mass. 2005).

The First Circuit's most recent pronouncement on the subject is *Thirteen Appeals*. There, the district court awarded attorneys' fees of 31% of a $220 million settlement fund – *i.e.*, roughly $68 million. On appeal, the First Circuit held that "use of the [percentage of fund] method in common fund cases is the prevailing praxis" based upon the "distinct advantages that the [percentage of fund] method can bring to bear in such cases." *Thirteen Appeals*, 56 F.3d at 307.[2]

Among the advantages recognized by the court in *Thirteen Appeals* was the fact that the percentage method is less burdensome to administer than the lodestar method, which "forc[es] the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended." *Thirteen Appeals*, 56 F.3d at 307. The court also acknowledged that the "shift in focus lessens the possibility of collateral disputes that might transform the fee proceeding into a second major litigation." *Id.* Moreover, the court recognized another important advantage of the percentage method, namely, that, unlike the lodestar method, it does not create a "'disincentive for the early settlement of cases.'" *Id.* (citation omitted). The percentage method more closely aligns Plaintiffs' Counsel's interests with the interests of the class. *Id.*

Additionally, the First Circuit in *Thirteen Appeals* noted that the percentage approach promotes more efficient use of attorney time because it is result-oriented. In contrast, the lodestar method, which is linked to time spent in obtaining a result, creates a disincentive for early settlement

---

[2]     The First Circuit noted that two Courts of Appeals had expressly **required** the use of percentage awards in common fund cases. *E.g.*, *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993). The Third Circuit has expressed a similar view. *See* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255 (Oct. 8, 1985), cited in *Thirteen Appeals*, 56 F.3d at 306.

of cases and rewards unproductive behavior. The court recognized that the percentage method also better reflects the market value of counsel's services

> because the [percentage of fund] technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace. We think that Judge Posner captured the essence of this point when he wrote that "the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). In fine, the market pays for the result achieved.

*Thirteen Appeals*, 56 F.3d at 307.

Further, application of the percentage approach in securities class actions is supported by the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." *See* 15 U.S.C. §78u-4(a)(6).

Finally, percentage fee awards in such cases "ensure that those who are engaged in the plaintiff's side of securities litigation are not unduly discouraged from prompt resolution of these cases and full pursuit of the claims of plaintiffs who, absent such counsel, would be unlikely to have any vindication of the rights that they have in this setting." *In re Sequoia Sys. Sec. Litig.*, [1993-1994 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶98,089, at 98,730 (D. Mass. Sept. 10, 1993).

### C.    The Requested Thirty Percent Fee Award Is Well Within the Applicable Range of Percentage of Fund Awards

In selecting an appropriate percentage award, both the Supreme Court and the First Circuit have recognized that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Thirteen Appeals*, 56 F.3d at 307. The ordinary contingency fee arrangement is for one-third or more of the settlement fund. *See Furtado v. Bishop*, 635 F.2d 915, 917 (1st Cir. 1980); *accord Blum*, 465 U.S. at 903 * ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

Courts in this Circuit and elsewhere frequently award attorneys' fees of thirty percent or more of the settlement fund in securities class actions. *See, e.g.*, *In re Biopure Corp. Sec. Litig.*, No. 03-12628-NG, slip op. (D. Mass. Sept. 24, 2007) (awarding 30% plus expenses); *Relafen*, 231 F.R.D. at 82 (awarding 33-1/3% plus expenses); *Deckler v. Ionics, Inc.*, No. 03-CV-10393-WGY, slip op. (D. Mass. Apr. 4, 2005) (30% of settlement proceeds); *In re Segue Software, Inc.*, No. 99-10891-RGS, slip op. (D. Mass. July 31, 2001) (33% of settlement fund); *Wilensky v. Digital Equip. Corp.*, No. 94-10752-JLT, slip op. (D. Mass. July 11, 2001) (33-1/3% fee awarded); *Chalverus v. Pegasystems, Inc.*, No. 97-12570-WGY, slip op. (D. Mass. Dec. 19, 2000) (33% fee awarded); *In re Zoll Med. Corp. Sec. Litig.*, No. 94-11579-NG, slip op. (D. Mass. Oct. 5, 1998) (33-1/3% of settlement); *In re Copley Pharm., Inc. Sec. Litig.*, No. 94-11897-WGY, slip op. (D. Mass. Feb. 8, 1996) (33-1/3% fee awarded); *In re Picturetel Corp. Sec. Litig.*, No. 97-12135-DPW, slip op. (D. Mass. Nov. 4, 1999) (one-third of fund awarded); *Zeid v. Open Env't Corp.*, No. 96-12466-EFH, slip op. (D. Mass. June 24, 1999) (one-third of fund awarded); *Morton v. Kurzweil Applied Intelligence, Inc.*, No. 94-10829-REK, slip op. (D. Mass. Feb. 4, 1998) (one-third of settlement fund); *In re Bay Fin. Corp. Sec. Litig.*, No. 89-2377-WD, slip op. (D. Mass. Nov. 4, 1996) (35% of settlement fund).[3]

---

[3]     *See also e.g.*, *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494 (D.D.C. 1981) (45% of settlement fund); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195 (S.D.N.Y. 1979) (53.2% of settlement fund), *aff'd*, 622 F.2d 1106 (2d Cir. 1980); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); *City Nat'l Bank v. Am. Commonwealth Fin. Corp.*, 657 F. Supp. 817 (W.D.N.C. 1987) (one-third of the recovery); *In re Franklin Nat'l Bank Sec. Litig.*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,571 (E.D.N.Y. June 24, 1980) (34% of settlement fund); *Baron v. Commercial & Indus. Bank*, [1979-1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,132 (S.D.N.Y. Oct. 3, 1979) (36.5% of settlement fund); *Adams v. Standard Knitting Mills, Inc.*, No. 8052, 1978 U.S. Dist. LEXIS 20317 (E.D. Tenn. Jan. 6, 1978) (35.15% of settlement fund); *Hwang v. Smith Corona Corp.*, No. B 89-450 (TFGD), slip op. (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund); *In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 U.S. Dist. LEXIS 21226 (D. Minn. June 2, 1993) (one-third of settlement fund).

Plaintiffs' Counsel's request for attorney fees of 30% of the Settlement Fund is therefore well within the range of numerous prior percentage awards made in this Circuit and elsewhere.

### D.     The Relevant Factors Support Plaintiffs' Counsel's Fee Request

In addition to examining fee awards in similar cases, courts within this Circuit and elsewhere typically examine a variety of factors to determine whether a percentage request is fair and reasonable, including, *inter alia*, the amount of the recovery; the skill and efficiency of counsel; the complexity of the litigation; the risk of non-payment; and the presence or absence of substantial objections by members of the class. *Relafen*, 231 F.R.D. at 84. Each of these factors, and other factors considered by the courts, weigh heavily in support of the 30% fee request in this case.

### 1.     The Amount of the Recovery

It is difficult to dispute that the benefit Plaintiffs' Counsel conferred on the Class – $6,300,000 in cash – is an excellent result. This is especially true where, as here, the case was fraught with risks and uncertainties, including the formidable and determined opposition of Defendants, who have consistently denied any wrongdoing, and divine's bankruptcy, which significantly complicated and prolonged the litigation and highlighted the competing claims for the limited funds available to satisfy a judgment. As described in the Joint Declaration and in the accompanying settlement brief, there existed the very real possibility that Plaintiffs would be unable to prove their claims, including the risk that Plaintiffs would not have succeeded in convincing a jury that Defendants possessed the requisite scienter or that many of the statements at issue were materially false and misleading. In addition, Plaintiffs faced significant hurdles to demonstrating loss causation and damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). In light of these obstacles, this Settlement represents an extraordinary result for the Class.

### 2.      The Skill and Efficiency of Counsel

Plaintiffs' Counsel are prominent and experienced plaintiffs' securities law firms.  *See In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *38 (C.D. Cal. June 10, 2005) ("The experience of counsel is also a factor in determining the appropriate fee award.").[4]  As the court recognized in *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987), the "prosecution and management of a complex national class action requires unique legal skills and abilities."  It is particularly important to reward attorneys with skill and standing for pursuing such cases as "the stated goal in percentage fee-award cases of 'ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (citation omitted).  *See also Tellabs*, 127 S. Ct. 2499.

The quality and efficiency of the services provided in this case by Plaintiffs' Counsel is evidenced by the substantial recovery obtained for the Class even though there was significant risk that a trial might have resulted in a finding for Defendants on liability or damages, or resulted in a lower judgment amount.

Plaintiffs' Counsel's skill and efficiency in representing Plaintiffs and the Class is also exemplified by the quality of the opposition in this case.  Counsel for Defendants are skilled and experienced in defending actions such as these.  The Settlement clearly reflects Defendants' awareness of Plaintiffs' Counsel's ability and readiness to go to trial if a fair settlement could not be achieved.  The ability of Plaintiffs to obtain an excellent settlement for the Class in the face of such formidable legal opposition further confirms the superior quality of counsel's representation.  *See In*

---

[4]      The experience of the law firms that represented Plaintiffs in this action is set forth in the accompanying declarations of Plaintiffs' Counsel, submitted herewith.

*re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) ("'The quality of representation is best measured by results.'") (citation omitted), *aff'd sub nom. Wal-Mart Stores, Inc., v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005).

### 3.    The Complexity of the Litigation and the Significant Obstacles to Recovery

The complexity and risk of the litigation also support the requested fee award in this case. As recognized by courts throughout the country, securities class actions, especially following the passage of the PSLRA, are inherently complex. *See, e.g.*, *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 1506, 2005 U.S. Dist. LEXIS 14772, at *47-*48 (E.D. Mo. June 30, 2005) ("Securities fraud class actions are by their nature, complex and difficult to prove."); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 496 (E.D. Pa. 2003) (noting that securities litigation is a complex field); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). This action involved complex principles and interpretation issues concerning Defendants' statements regarding integration of acquired businesses that could be difficult to prove and explain to a jury. Throughout this litigation, Defendants vigorously contested issues of liability and damages and advanced arguments that may have been successful at the motion to dismiss stage or might have persuaded a jury to find in their favor.

In order for Plaintiffs to prove their claims at trial, they would have to prove that the Defendants made material misstatements and, with respect to their claims asserted under §10(b), that they were made with scienter. Scienter, "a mental state embracing intent to deceive, manipulate, or defraud" (*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)), is an essential element of a §10(b) claim. To establish defendants' scienter in this Circuit, plaintiffs must prove either that the "'defendants consciously intended to defraud, or that they acted with a high degree of recklessness.'" *Ezra Charitable Trust v. Tyco Int'l, Ltd.*, 466 F.3d 1, 6 (1st Cir. 2006) (citation omitted).

- 12 -

Throughout the litigation, Defendants argued that the allegedly false and misleading statements that Defendants made were very general in nature and constituted non-actionable "puffery"; that any alleged misstatements were not made with scienter, because Defendants were not aware that these statements were false and misleading when made; and that the Class could not establish loss causation, because almost all of the drop in the share price of divine occurred during the Class Period and such drops were not in response to any statements Defendants made which disclosed the truth or were "curative" of false and misleading information on the market in any way. Nearly all of the witnesses testifying about Defendants' conduct would have been current and former employees or directors of a defunct company, and would be unlikely to materially assist Plaintiffs in proving their case. Many of the documents in this action would likely be dense financial statements, and it is far from certain that Plaintiffs' Counsel could present them in a manner that would convince a jury to find in the Class's favor.

### 4.    The Risk of Non-Payment

Unlike defense counsel who have been paid on a current basis, Plaintiffs' Counsel diligently and vigorously pursued this case on an entirely contingent fee basis. Counsel litigated in this Court and in the Bankruptcy Court for over four years with no guarantee of payment for their services. Courts have recognized that the risk of non-payment in complex cases such as this one is very real and heightened when, as in this case, Plaintiffs' Counsel press to achieve the very best result for those they represent.

### 5.    Public Policy Favors the Requested Fee

The requested fee award would also be consistent with public policy and judicial economy interests that support the expeditious settlement of cases. As noted in *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002):

> [E]fficient prosecution of plaintiffs' claims weighs in favor of a finding of the quality of Plaintiffs' Class Counsel's representation here . . . . "[A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." In the context of a complex class action, early settlement has far reaching benefits in the judicial system.

*Id.* at 373 (quoting *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 101-02 (3d Cir. 1985)) (emphasis omitted). *Accord In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 133 (D.N.J. 2002) ("Informal discovery leading to an early settlement that avoids such costs [of formal discovery] favors approval of the fee application."); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *21 (S.D. Cal. Aug. 30, 1990) ("Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements – especially in complex class action cases – should be done.").

**E.     The Reaction of the Class Favors the Requested Fee**

Finally, the favorable reaction of the Class Members also supports the reasonableness of the fee request. The Notice advised potential Class Members that Plaintiffs' Counsel would apply to the Court for a fee not to exceed 33% of the Settlement Fund and expenses not to exceed $425,000. Not a single member of the Class has objected to the fee or expense request. Consequently, the favorable reaction of the Class further supports the requested fee award. *See, e.g.*, *Sequoia Sys.*, ¶98,089, at 98,729; *Ressler*, 149 F.R.D. at 656 (a lack of objections is "strong evidence of the propriety and acceptability" of the fee request).

**F.     The Fee Request Is Also Fully Justified Under the Lodestar/Multiplier Approach**

The First Circuit does not require a court to cross-check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee. *Relafen*, 231 F.R.D. at 81. Nevertheless, the requested fee is also reasonable under the lodestar method of analysis. As reflected in the accompanying declarations, petitioners have devoted 2,870.08 hours and

$1,555,345.50 in time charges, at current hourly rates,[5] to the prosecution and settlement of this complex litigation. The requested fee amounts to a reasonable multiple of counsel's lodestar.

In reviewing an application for an award of attorneys' fees in a class action, a "risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for their services.'" *Florin v. NationsBank, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) (quoting *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992)). Moreover, as the Seventh Circuit has stated, "[t]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent." *Cont'l Ill.*, 962 F.2d at 569. In this case, Plaintiffs' Counsel's fee award was entirely contingent on whether they successfully prosecuted and/or settled this litigation.

The slight multiplier reflected here falls well below the range of multipliers found reasonable for cross-check purposes by courts throughout the country, and is fully justified here given the effort required, the risk faced and overcome and the results achieved. *See, e.g.*, *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998) (awarding multiplier of 8.9); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735-36 (E.D. Pa. 2001) (25% fee representing 10.73 multiplier); *In re RJR Nabisco Sec. Litig.*, No. MDL 818, 1992 U.S. Dist. LEXIS 12702, at *22 (S.D.N.Y. Aug. 24, 1992) (approving fees of over $17.7 million, notwithstanding objection that such award of fees represented a multiplier of six); *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (multiplier of 9.3); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (multiplier of 8.74); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (approving multiplier of 3.97 and noting that "'[i]n recent years multipliers of between 3 and 4.5 have become

---

[5]     The Supreme Court has held that the use of current rates is proper because those rates more adequately compensate for inflation and loss of use of funds. *Jenkins*, 491 U.S. 274.

common'") (citation omitted); *Kurzweil v. Philip Morris Cos.*, No. 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378, at *8 (S.D.N.Y. Nov. 30, 1999) (noting that multipliers between 3 and 4.5 are common in federal securities cases).

Indeed, the very nature of contingent fees means that counsel are taking considerable risks in prosecuting cases on a contingent fee basis. In some cases, counsel are not successful and receive no fee for their efforts. In other cases, counsel receive a fee that is either less than, or approximately equal to their regular time charges, or lodestar. In yet other cases, such as this one, the risk counsel undertakes is rewarded when a reasonable percentage of the recovery provides a fee which is slightly in excess of their time charges.

### G.    The Expenses Incurred by Plaintiffs' Counsel Were Reasonable

As demonstrated in the declarations of counsel submitted herewith, Plaintiffs' Counsel have incurred expenses of $451,283.94 in successfully prosecuting this action. These expenses included costs for, among other things, filing fees, service of process, travel, legal research, copying, bankruptcy counsel and consultants. The expenses for which reimbursement is sought herein are the type of expenses for which "the paying, arms' length market" reimburses attorneys, and they are properly chargeable to the settlement fund. *See, e.g.*, *Cont'l Ill.*, 962 F.2d at 570. They are reasonable and necessary within the parameters set by this Circuit. *See In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) (class counsel creating a common fund is entitled to recover "expenses, reasonable in amount, that were necessary to bring the action to a climax").

As noted above, no Class Member has objected to the amount of expenses being sought by Plaintiffs' Counsel. The positive reaction of the Class further supports the requested expense award. *See, e.g.*, *Sequoia Sys.*, [1993-1994 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶98,089, at 98,729.

- 16 -

III.    CONCLUSION

For all of the foregoing reasons, Plaintiffs' Counsel respectfully request that the Court award:

(i) attorney fees of 30% of the Settlement Fund; and (ii) expenses in the amount of $451,283.94, plus

interest on both amounts.

DATED:  June 17, 2008                    Respectfully submitted,

                                         GILMAN AND PASTOR, LLP
                                         DAVID PASTOR
                                         60 State Street, 37th Floor
                                         Boston, MA  02109
                                         Telephone:  617/742-9700
                                         617/742-9701 (fax)

                                         COUGHLIN STOIA GELLER
                                           RUDMAN & ROBBINS LLP
                                         SAMUEL H. RUDMAN
                                         DAVID A. ROSENFELD
                                         MARIO ALBA, JR.
                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)

                                         COUGHLIN STOIA GELLER
                                           RUDMAN & ROBBINS LLP
                                         ELLEN GUSIKOFF STEWART


                                                s/ Ellen Gusikoff Stewart
                                         _____
                                            ELLEN GUSIKOFF STEWART

                                         655 West Broadway, Suite 1900
                                         San Diego, CA  92101-3301
                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)

- 17 -

STULL, STULL & BRODY
HOWARD T. LONGMAN
6 East 45th Street
4th Floor
New York, NY 10017
Telephone: 212/687-7230
212/490-2022 (fax)

Co-Lead Counsel for Plaintiffs and the Class

ROBBINS UMEDA & FINK, LLP
MARC M. UMEDA
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: 619/525-3990
619/525-3991 (fax)

Attorneys for Plaintiffs Mike Turner, James F.
Howard and Chris Brown

C:\Program Files\DocsCorp\pdfDocs PDF\users\dscott\Import\BRF FEE 00052020.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2008, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to the e-mail

addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on June 17, 2008.

<div style="margin-left: 45%;">

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail: EllenG@csgrr.com

</div>

# Mailing Information for a Case 1:04-cv-12263-PBS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Bruce S. Barnett**
  bruce.barnett@dlapiper.com,janine.medina@dlapiper.com

- **Thomas David Brooks**
  tdbrooks@sperling-law.com

- **Joel G. Chefitz**
  jchefitz@mwe.com

- **Christopher J. Panos, Trustee of the Sabine, Inc. Liquidating Trust**
  jkoltun@craigmacauley.com

- **Joseph Edward Collins**
  joseph.collins@dlapiper.com

- **Mayeti Gametchu**
  mgametchu@wolfblock.com,mahall@wolfblock.com

- **Ellen Anne Gusikoff Stewart**
  elleng@csgrr.com,elleng@csgrr.com

- **James E. Hanlon , Jr**
  hanlonj@howrey.com

- **Howard T. Longman**
  tsvi@aol.com

- **Kevin J. O'Connor**
  koconnor@wolfblock.com,mahall@wolfblock.com

- **David Pastor**
  dpastor@gilmanpastor.com,rkaloutas@gilmanpastor.com,sdurgin@gilmanpastor.com

- **Stephanie R. Pratt**
  spratt@segalroitman.com,jstein@segalroitman.com

- **David A. Rosenfeld**
  drosenfeld@csgrr.com

- **Samuel H. Rudman**
  SRudman@csgrr.com

- **Anne R. Sills**

asills@segalroitman.com,sgillin@segalroitman.com,tsullivan@segalroitman.com

- **Bruce S. Sperling**
  bss@sperling-law.com

- **Mary T. Sullivan**
  msullivan@segalroitman.com,jstein@segalroitman.com,sgillin@segalroitman.com

- **Marc A. Topaz**
  ecf_filings@sbtklaw.com

- **Marc M. Umeda**
  notice@ruflaw.com,zimmer@ruflaw.com,umeda@ruflaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Guri Ademi
Ademi & O'Reilly
3620 East Layton
Cudahy, WI 53110

Shpetim Ademi
Ademi & O'Reilly
3620 East Layton
Cudahy, WI 53110

Celiza Patricia Braganca
Sperling & Slater
55 West Monroe Street
Suite 3200
Chicago, IL 60603

Michael A. Duffy
Kirkland &Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Eugene J. Frett
Sperling & Slater
55 West Monroe Street
Suite 3200
Chicago, IL 60603

John A.D. Gilmore
DLA Piper Rudnick Gray Cary US LLP
One International Place, 21st Floor
100 Oliver Street
Boston, MA 02110-2600

John F. Hartmann
Kirkland & Ellis LLP
200 East Randolph Drive
```

Chicago, IL 60601

**Bruce C. Howard**
Law Offices of Robert D. Allison
122 South Michigan Avenue 1850
Chicago, IL 60603

**Douglas Warren Hyman**
Piper Rudnick LLP
203 North LaSalle Street
#1900
Chicago, IL 60601-1293

**Samuel Bayard Isaacson**
Piper Rudnick LLP
203 North LaSalle Street
#1900
Chicago, IL 60601-1293

**Daniel J. Lyne**
Hanify & King
Professional Corporation
One Beacon Street
Boston, MA 02108-3107

**Marvin Allen Miller**
Miller Faucher and Cafferty, LLP
30 North LaSalle Street
Suite 3200
Chicago, IL 60602

**Christopher B. Sanchez**
Miller Faucher and Cafferty, LLP
30 North LaSalle Street
Suite 3200
Chicago, IL 60602

**Patrick J. Sherlock**
Beigel, Schy, Lasky, Cohen, Rifkind & Hennessey
11 South LaSalle
Suite 1600
Chicago, IL 60606

**Jennifer Winter Sprengel**
Miller Faucher and Cafferty, LLP
30 North LaSalle Street
Suite 3200
Chicago, IL 60602

**Lawrence A. Wojcik**
Piper Rudnick Gray Cary US LLP
203 N. LaSalle
Suite 1800
Chicago, IL 60601-1293