# EXHIBIT A

# CAFFERTY FAUCHER LLP

Founded as Miller Faucher Chertow Cafferty and Wexler in 1992, Cafferty Faucher LLP, as the firm became known in 2007, combines the talents of attorneys with a wide range of experience in complex civil litigation. The firm has offices in Chicago, Illinois, Philadelphia, Pennsylvania and Ann Arbor, Michigan. Cafferty Faucher's primary expertise is in the area of federal and state antitrust, securities, commodities, employee benefits and consumer protection litigation. The skill and experience of attorneys now practicing with Cafferty Faucher has been recognized on repeated occasions by courts which have appointed these attorneys to major positions in complex multi-district or consolidated litigation. As shown below, attorneys from Cafferty Faucher have taken a leading role in numerous important actions on behalf of defrauded investors, employees, consumers, companies, and others. Cafferty Faucher attorneys have been responsible for a number of outstanding recoveries and important decisions.[1]

*I. Antitrust*
*Federal and state antitrust laws protect the public interest by ensuring market competition. Business practices which restrain trade or destroy competition—such as competitors fixing prices—are generally prohibited. In order to supplement governmental enforcement of the antitrust laws, federal and state law provide for private causes of action to persons injured in their business or property by reason of antitrust violations. Some of the significant antitrust cases in which Cafferty Faucher attorneys have been prominently involved include:*

❑ *Nichols v. SmithKline Beecham Corp.*, No. 00-CV -442 (E.D. Pa.). Plaintiffs allege that SmithKline, which makes the brand-name antidepressant Paxil, misled the United States Patent Office into issuing patents to protect Paxil from competition from generic substitutes. On April 22, 2005, Judge John R. Padova granted final approval to a $65 million class action settlement for the benefit of consumers and third-party payors who paid for Paxil. *Nichols v. SmithKline Beecham Corp.*, 2005-1 Trade Cas. (CCH) ¶74,762 (E.D. Pa. April 22, 2005). *See also Nichols v. SmithKline Beecham Corp.*, 2003 WL 302352 2003-1 Trade Cas. (CCH) ¶ 73,974 (E.D. Pa. Jan. 29, 2003) (denying defendant's motion to strike expert testimony).
See www.paxilclaims.com.

❑ *In re Relafen Antitrust Litig.* 01-12239 (D. Mass.). On September 28, 2005, Judge William G. Young of the United States District Court for the District of Massachusetts granted final approval to a $75 million class action settlement for the benefit of consumers and third-party payors who paid for branded and generic versions of the arthritis medication Relafen. In certifying an exemplar class of end-payors, the court singled out our Firm as experienced and vigorous advocates. *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 273 (D. Mass. 2004). In the opinion granting final approval to the settlement, the court commented that "Class counsel here exceeded my expectations in these

---

[1] The cases addressed herein have been completely or partially resolved. Cafferty Faucher attorneys are currently involved as counsel in a number of pending class actions.

respects [*i.e.*, experience, competence, and vigor] in every way." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85 (D. Mass. 2005); *see also id.* at 80 ("The Court has consistently noted the exceptional efforts of class counsel."). The litigation has produced many significant decisions including: 286 F Supp. 2d 56 (D. Mass. 2003) (denying motion to dismiss); 346 F. Supp. 2d 349 (D. Mass. 2004) (denying defendant's motion for summary judgment).
*See* www.relafensettlement.com.

❏ *In re Warfarin Sodium Antitrust Litig.*, MDL 98-1232 (D. Del.). Multidistrict class action on behalf of purchasers of Coumadin, the brand-name warfarin sodium manufactured and marketed by DuPont Pharmaceutical Company. Plaintiffs alleged that the defendant engaged in anticompetitive conduct that wrongfully suppressed competition from generic warfarin sodium. On August 30, 2002, the Court granted final approval to a $44.5 million settlement. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002)http://www.coumadinsettlement.com.. On December 8, 2004, the United States Court of Appeals for the Third Circuit upheld approval of the settlement. 391 F.3d 516 (3d Cir. 2004).
*See* www.coumadinsettlement.com.

❏ *In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich.). Multidistrict class action on behalf of purchasers of Cardizem CD, a brand-name heart medication manufactured and marketed by Hoechst Marion Roussel, Inc. (now merged into Aventis Pharmaceuticals, Inc.) Plaintiffs alleged that an agreement between HMR and generic manufacturer Andrx Corp. unlawfully stalled generic competition. On October 1, 2003, Judge Nancy Edmunds granted final approval to an $80 million settlement for the benefit of third-party payors and consumers. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003), *app. dismissed*, 391 F.3d 812 (6th Cir. 2004). The litigation resulted in several significant decisions, including: 105 F. Supp. 618 (E.D. Mich. 2000) (denying motions to dismiss); 105 F. Supp. 2d 682 (E.D. Mich. 2000) (granting plaintiffs' motions for partial summary judgment and holding agreement *per se* illegal under federal and state antitrust law); 200 F.R.D. 326 (E.D. Mich. 2001) (certifying exemplar end-payor class); 332 F.3d 896 (6th Cir. 2003) (upholding denial of motion to dismiss and grant of partial summary judgment), *cert. denied*, 125 S.Ct. 307 (2004).
*See* www.cardizemsettlement.com.

❏ *House v. GlaxoSmithKline PLC*, No. 2:02cv442 (E.D. Va.). Plaintiffs allege that GSK, which makes Augmentin, misled the United States Patent Office into issuing patents to protect Augmentin from competition from generic substitutes. On January 10, 2005, the court entered and order approving a $29 million settlement for the benefit of consumers and third-party payors.
*See* http://www.augmentinlitigation.com.

❏ *In re Synthroid Marketing Litig.*, MDL No. 1182 (N.D. Ill). This multidistrict action arises out of alleged unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders. On August 4, 2000, the court granted final approval of a settlement in the amount of $87.4 million plus interest. *See* 188 F.R.D. 295 (N.D. Ill. 1999). On August 31, 2001, approval of the settlement was upheld on appeal. *See* 264 F.3d 712 (7th Cir. 2001).

❏ *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL 1290 (D.D.C.). This multidistict class action arose out of an alleged scheme to corner the market on the active pharmaceutical ingredients necessary to manufacture generic clorazepate and lorazepam tablets. After cornering the market on the supply, defendants raised prices for generic clorazepate and

lorazepam tablets by staggering amounts (*i.e.*, 1,900% to over 6,500%) despite no significant increase in costs. On February 1, 2002, Judge Thomas F. Hogan approved a class action settlements on behalf of consumers, state attorneys general and third party payors in the aggregate amount of $135 million. *See* 205 F.R.D. 369 (D.D.C. 2002).

❐ *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394 (N.D. Ill.). Antitrust class action arising out of alleged stabilization of urologist fees in the Chicago metropolitan area. The parties have entered a settlement agreement and are in the process of seeking court approval. In granting class certification, Judge George Lindberg stated that "Miller Faucher is experienced in antitrust class action litigation and defendants do not dispute that they are competent, qualified, experienced and able to vigorously conduct the litigation." *Sebo v. Rubenstien*, 188 F.R.D. 310, 317 (N.D. Ill. 1999). On June 12, 2000, the court approved a $1.4 million settlement. *In re Lithotripsy Antitrust Litig.*, 2000 WL 765086 (N.D. Ill. June 12, 2000).

❐ *Brand-Name Prescription Drug Indirect Purchaser Actions*. Coordinated antitrust actions against the major pharmaceutical manufacturers in ten states and the District of Columbia. The actions were brought under state law on behalf of indirect purchaser consumers who obtained brand name prescription drugs from retail pharmacies. In 1998, the parties agreed to a multistate settlement in the amount of $64.3 million, which was allocated among the actions. In approving state-specific settlements, the courts were highly complementary of the performance of counsel. In approving the Wisconsin Settlement, for example, Judge Moria G. Krueger commented that "this Court, in particular, has been helped along every step of the way by some outstanding lawyering and I believe that applies to both sides. ... You can hardly say that there's been anything but five star attorneys involved in this case". *Scholfield v. Abbott Laboratories*, No. 96 CV 0460, Transcript of Hearing at 31 & 33 (Cir. Ct., Dane Co., Wisc., Oct. 5, 1998). *See also McLaughlin v. Abbott Laboratories*, No. CV 95-0628, Transcript of Proceedings at 28 (Super. Ct., Yavapai County, Oct. 28, 1998) ("I think the quality of counsel is excellent."). Reported decisions include: *Goda v Abbott Labs*, 1997-1 Trade Cas. (CCH) ¶71,730 (Superior Court D.C., Feb 3, 1997) (granting class certification); *In re Brand Name Prescription Drugs Antitrust Litig. (Holdren, Yasbin, Meyers)*, 1998-1 Trade Cas. (CCH) ¶72,140 (N.D. Ill., Feb. 26, 1998) (remanding three actions to state courts).

❐ *In Re Cellular Phone Cases*, Coordination Proceeding No. 4000 (Superior Court, San Francisco County, Cal.) Class action under California's Cartwright Act, which alleged price-fixing of cellular telephone service in the San Francisco area market. On February 20, 1998, the court granted final approval to a settlement that provides $35 million in in-kind benefits to the Class and a release of debt in the amount of $35 million.

❐ *Garabedian v. LASMSA Limited Partnership*, No. 721144 (Superior Court, Orange County, Cal.). Class action under California's Cartwright Act which alleged price-fixing of cellular telephone service in the Los Angeles area market. By order of January 27, 1998, the court granted final approval to two settlements that provide $165 million in in-kind benefits.

❐ *Lobatz v. AirTouch Cellular*, 94-1311 BTM (AJB) (S.D. Cal.) Class action alleging price-fixing of cellular telephone service in San Diego County, California. On June 11, 1997, the court approved a partial settlement in the amount of $4 million. On October 28, 1998, the Court approved another settlement that entailed $4 million worth of in-kind benefits. In an order

entered May 13, 1999, Judge Moskowitz stated that "[t]hrough the course of this complex and four-year long litigation, Class Counsel demonstrated in their legal briefs and arguments before this Court their considerable skill and experience in litigating anti-trust class actions..."

◻ *In re Airline Ticket Commission Antitrust Litig.*, MDL No. 1058 (D. Minn.) Antitrust class action on behalf of travel agents against the major airlines for allegedly fixing the amount of commissions payable on ticket sales. The action settled for $87 million. *See* 953 F. Supp. 280 (D. Minn. 1997).

## II. Employee Benefits

In 1974, Congress adopted the Employee Retirement Income Security Act (ERISA), which is designed to protect the interests of participants and beneficiaries in employer-sponsored pension and welfare benefits plans. Cafferty Faucher attorneys have been involved in numerous ERISA cases, including:

◻ *Polk v. Hecht*, No. 92-1340 (D.N.J.). Class action brought under the Employee Retirement Income Act of 1974 on behalf of all participants or beneficiaries under the Mutual Benefit Life Savings and Investment Plan for Employees on July 16, 1991, when Mutual Benefit Life Insurance Corporation was placed in rehabilitation. On April 12, 1995, Judge Harold A. Ackerman approved a $4.55 million settlement, noting that "[c]ounsel did a darn good job, and the record should be clear on that point, that that is the opinion, for what it's worth, of this Court."

◻ *In Re Unisys Retiree Medical Benefits ERISA Litig.*, MDL No. 969 (E.D. Pa). Class action on behalf of over 25,000 retirees of Unisys Corporation concerning entitlement to retiree medical benefits. After trial, in November 1994, Chief Judge Cahn approved a partial settlement in the amount of $72.9 million. *See* 57 F.3d 1255 (3d Cir. 1995).

## III. Securities and Commodities

In response to the stock market crash in 1929, Congress passed the Securities Act of 1933 and the Securities Exchange Act of 1934 to protect investors from deceptive and manipulative practices and to ensure that the United States' securities markets operate freely and efficiently. These statutes, as well as other state and federal legislation, provide private causes of action to defrauded investors. Similarly, the Commodities Exchange Act of 1974 provides causes of action to investors injured by fraud or unlawful manipulation in commodities markets. Some of the significant securities and commodities cases in which Cafferty Faucher attorneys have been prominently involved include:

◻ *Danis v. USN Communications, Inc.*, No. 98 C 7482 (N.D. Ill.). Securities fraud class action arising out of the collapse and eventual bankruptcy of USN Communications, Inc. On May 7, 2001, the court approved a $44.7 million settlement with certain control persons and underwriters. Reported decisions: 73 F. Supp. 2d 923 (N.D. Ill. 1999); 189 F.R.D. 391 (N.D. Ill. 1999); 121 F. Supp. 2d 1183 (N.D. Ill. 2000).

◻ *In re Sumitomo Copper Litig.*, 96 Civ. 4584(MP) (S.D.N.Y.). Class action arising out of manipulation of the world copper market. On October 7, 1999, the court approved settlements aggregating $134,600,000. *See* 189 F.R.D. 274 (S.D.N.Y. 1999). In awarding attorneys' fees, Judge Milton Pollack noted that it was "the largest class action recovery in the 75 plus year history of the Commodity Exchange Act". 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999). Additional reported opinions: 995 F. Supp. 451 (S.D.N.Y. 1998); 182 F.R.D. 85 (S.D.N.Y. 1998).

☐ *In re Exide Corporation Sec. Litig.*, No. 98-CV-60061 (E.D. Mich.). Securities fraud class action arising out of sales and financial practices of leading battery manufacturer. On September 2, 1999, Judge George Caram Steeh approved a settlement in the amount of $10,250,00.

☐ *In re Caremark International Inc. Sec. Litig.*, No. 94 C 4751 (N.D. Ill.). Securities fraud class action arising out of Caremark's allegedly improper financial arrangements with physicians. On December 15, 1997, the court approved a $25 million settlement.

☐ *In re Nuveen Fund Litig.*, No. 94 C 360 (N.D. Ill.). Class action and derivative suit under the Investment Company Act arising out of coercive tender offerings in two closed-end mutual funds. On June 3, 1997, the court approved a $24 million settlement. Magistrate Judge Edward A. Bobrick commented that "there's no question that the attorneys for the plaintiffs and the attorneys for the defendants represent the best this city [Chicago] has to offer ... this case had the best lawyers I've seen in a long time, and it is without question that I am committed to a view that their integrity is beyond reproach." (6/3/97 Tr. at 5-6.)

☐ *In re Archer-Daniels-Midland, Inc. Sec. Litig.*, No. 95-2287 (C.D. Ill.). Securities fraud class action arising out of the Archer-Daniels-Midland price-fixing scandal. On April 4, 1997, the court approved a $30 million settlement.

☐ *In re Soybean Futures Litig.*, No. 89 C 7009 (N.D. Ill.). A commodities manipulation class action against Ferruzzi Finanziaria, S.p.A. and related companies for unlawfully manipulating the soybean futures market in 1989. In December, 1996, the court approved a settlement in the amount of $21,500,000. *See* 892 F. Supp. 1025 (N.D. Ill. 1995).

☐ *In re Prudential Securities Incorporated Limited Partnerships Litig.*, MDL 1005 (S.D.N.Y.). A massive multidistrict class action arising out of Prudential Securities Incorporated's marketing and sale of speculative limited partnership interests. On November 20, 1995, the court approved a partial settlement, which established a $110 million settlement fund. *See* 912 F. Supp. 97 (S.D.N.Y. 1996). On August 1, 1997, the court approved a partial settlement with another defendant in the amount of $22.5 million.

☐ *Feldman v. Motorola, Inc.*, No. 90 C 5887 (N.D. Ill.) Securities fraud class action against Motorola, Inc. and its high ranking officers and directors. In June 1995, the court approved a $15,000,000 settlement. *See* [1993 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶97,806 (N.D. Ill. Oct. 14, 1993).

☐ *In re Salton/Maxim Sec. Litig.*, No. 91 C 7693 (N.D. Ill.). Class action arising out of public offering of Salton/Maxim Housewares, Inc. stock. On September 23, 1994, Judge James S. Holderman approved a $2.4 million settlement, commenting that "it was a pleasure to preside over [the case] because of the skill and the quality of the lawyering on everyone's part in connection with the case."

☐ *Horton v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, No. 91-276-CIV-5-D (E.D.N.C.). A $3.5 million settlement was approved on May 6, 1994 in this securities fraud class action arising out of a broker's marketing of a speculative Australian security. The Court stated that "the experience of class counsel warrants affording their judgment appropriate deference in determining whether to approve the proposed settlement." 855 F. Supp. 825, 831 (E.D.N.C. 1994).

❑ *In re International Trading Group, Ltd. Customer Account Litig.*, No. 89-5545 RSWL (GHKx) (C.D. Cal.) Class action alleging violation of the anti-fraud provisions of the Commodity Exchange Act. The case settled with individual defendants and proceeded to a judgment against the corporate entity. In that phase, the Court awarded the Class a constructive trust and equitable lien over the corporation's assets and entered a $492 million judgment in favor of the Class. Approximately $7 million was recovered on the judgment.

❑ *In re Telesphere Sec. Litig.*, 89 C 1875 (N.D. Ill.) Securities fraud class action settled for $1.5 million. In a November 28, 1990 opinion, Judge Milton I. Shadur noted that Patrick E. Cafferty's credentials are "impeccable." 753 F.Supp. 716, 719 (N.D. Ill. 1990).

❑ *Hoxworth v. Blinder Robinson & Co.*, 88-0285 (E.D. Pa.). Securities fraud and RICO class action resulting from alleged manipulative practices and boiler-room operations in the sale of "penny stocks." *See* 903 F.2d 186 (3rd Cir. 1990). Judgment in excess of $70 million was obtained in February, 1992. The judgment was affirmed by the Third Circuit Court of Appeals, 980 F.2d 912 (3rd Cir. 1992). *See also Hoxworth v. Blinder*, 74 F.3d 205 (10th Cir. 1996).

❑ *In re Public Service Company of New Mexico Class and Derivative Litig.*, Master File No. 91-0536-M (S.D. Cal.). Consolidated class and derivative action involving allegations of waste and mismanagement at the Public Service Company of New Mexico. In May, 1992, the court approved a settlement of $33 million. *See* [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,988 (S.D. Cal. 1992).

❑ *In re First Commodity Corporation of Boston Customer Account Litig.*, MDL-713 (D. Mass). Class actions alleging violation of the anti-fraud provisions of the Commodity Exchange Act. The action settled for $5.3 million. *See* 119 F.R.D. 301 (D. Mass. 1987).

❑ *O'Brien v. National Property Analysts, Inc.*, No. 88 CIV 4153 (PKL) (S.D.N.Y.) Securities fraud class action arising out of the marketing of real estate limited partnership interests. This case was partially settled for $5,000,000 and the invalidation of wrap around mortgages worth as much as $250 million.

❑ *Spring/Rothschild v. Continental Illinois National Bank & Trust Company*, 84 C 4648 and 84 C 8596 (consolidated) (N.D. Ill.) Shareholder class action for violations of the Securities Exchange Act. The court approved a settlement in the amount of $17.5 million for the class.

❑ *Smith v. Groover*, 77 C 2297 (N.D.Ill.). A commodities fraud and antitrust class action against the Chicago Board of Trade and several floor traders involving the manipulation of the soybean market through bucketing. The case established that, in the Northern District of Illinois, a plaintiff has an implied private right of action under the Commodity Exchange Act and that an Exchange can be sued for negligence in failing to supervise its members. The case was affirmed, *sub nom*, by the United States Supreme Court in *Merrill Lynch Pierce Fenner & Smith v. Curran*, 451 U. S. 906 (1982).

### IV. Shareholder Derivative Suits

*When the management of a corporation acts to the detriment of the interests of the company and its shareholders, an individual shareholder, upon satisfying stringent procedural requirements, can assert the right of the corporation in a derivative action. Cafferty Faucher attorneys have been involved in several important derivative actions including:*

☐ ***Benfield v. Steindler***, No. C-1-92-729 (S.D. Ohio). Shareholder derivative suit on behalf of General Electric Corporation shareholders arising out of the sale of military aircraft engines to the government of Israel in violation of U.S. law. On December 10, 1993, the Court approved a settlement in the amount of $19.5 million. In a January 13, 1994 Report to the Court Concerning Attorney Fees, the Special Master characterized the firm as a "leading litigation" firm, and stated that the "representation given plaintiff was first rate".

☐ ***In re Structural Dynamics Research Corporation Derivative Litig.***, No. C-1-94-650 (S.D. Ohio). Shareholder derivative action arising out of Structural Dynamics's inaccurate reporting of its financial performance. In approving a $5 million settlement on July 19, 1996, Judge Herman J. Weber stated that "in my mind the highest professional service a lawyer can give to his or her client is to terminate the litigation as early as possible and at the most economical cost to your clients. The Court finds that the lawyers in this case have done just that..."

### V. Miscellaneous

☐ ***PrimeCo Personal Communications, L.P. v. Illinois Commerce Commission***, No. 98 CH 5500 (Circuit Court of Cook County, Ill.). This class action sought recovery of an unconstitutional infrastructure maintenance fee imposed by municipalities on telephone and other telecommunications customers in the State of Illinois. On August 1, 2002, the court granted final approval to a settlement of wireless telephone and pager customers' claims against the City of Chicago worth over $31 million. The case continues as to landline telephone customers' claims against the City of Chicago, and both wireless and landline claims against other municipalities.

☐ ***Gersenson v. Pennsylvania Life and Health Insurance Guaranty Assoc.***, No. 3468 (Pa. Common Pleas). Class action against state insurance guaranty association brought on behalf of Pennsylvania resident insureds of Executive Life Insurance Co. for violating due process, and failing to pay required benefits and other monies. Plaintiff's motion for summary judgment was granted and the court awarded plaintiff and the Class more than $18 million. The judgment was upheld on appeal.

☐ ***Supnick v. Amazon.Com, Inc., and Alexa Internet***, No. 00-CV-221 (W.D. Wash.). Class action against internet browsing service provider and its parent for violating user privacy by secretly collecting user personally identifying information without informed consent. On July 27, 2001, the court granted final approval to a settlement that included programmatic and monetary relief. The FTC endorsed the settlement and elected to not prosecute defendants based, in part, on the relief achieved in the settlement with plaintiffs.

☐ ***Curley v. Cumberland Farms Dairy, Inc.***, No. 86-5057 (D.N.J.). Class action arising out of convenience store chain's treatment of employees to prevent losses. In September 1993 the court approved a settlement in the amount of $5.5 million. In a November 12, 1993 opinion awarding attorneys fees, Judge Stanley S. Brotman noted that "petitioners [including Mr. Faucher and Ms. Meriwether] demonstrated in this case great skill and determination in representing their clients through the many stages of this lengthy and complex litigation."

❏ *In re Chubb Corporation Drought Insurance Litig.*, MDL-782 (S.D. Ohio). A breach of contract action arising out of the termination of an agricultural drought insurance program in the midst of the drought of 1988. The action settled for more than $70 million.

*VI.    Individual Biographies*

### *PARTNERS*

❏ **J. DENNIS FAUCHER** (Retired) was a partner in the Philadelphia law firm of Saul, Ewing, Remick & Saul ("Saul Ewing") from 1974 through 1991. Mr. Faucher received his law degree from the University of Idaho Law School, *summa cum laude*, in 1962. He received his undergraduate degree from the University of Idaho in 1959. His practice includes civil trial and appellate practice before federal and state courts, banking litigation, securities litigation, and all aspects of business bankruptcy law. He is a member of the Philadelphia Trial Lawyers Association (Commercial Litigation Committee) and American Bar Association (Commercial Litigation Committee of Litigation Section). He also is a former Assistant Professor of Law, University of Idaho, and a former attorney for the Trustees of the Penn. Central Railroad Reorganization. Mr. Faucher is licensed to practice in all state and appellate and trial courts of Pennsylvania and Idaho, and is also a member of bars of the Supreme Court of the United States, Courts of Appeals for the Second, Third, and Ninth Circuits, Tax Court of the U.S., and the United States District Court for the Eastern District of Pennsylvania and the District of Idaho.

❏ **PATRICK E. CAFFERTY** (Ann Arbor) graduated from the University of Michigan, with distinction, in 1980 and obtained his J.D., *cum laude*, from Michigan State University – College of Law in 1983. In law school, he received the American Jurisprudence Award for study of commercial transactions law. From 1983 to 1985, he served as a prehearing attorney at the Michigan Court of Appeals and as a Clerk to Judge Glenn S. Allen, Jr. of that Court. Mr. Cafferty is admitted to the state bars of Michigan and Illinois, the Supreme Court of the United States, the United States Courts of Appeals for the Second, Third, Fourth, Sixth and Seventh Circuits, and the United States District Courts for the Eastern District of Michigan, Western District of Michigan, District of Arizona and Northern District of Illinois. Mr. Cafferty is a member of the Amicus Committee of the National Association of Securities and Commercial Law Attorneys and he has authored briefs filed with the Supreme Court in a number of cases, including *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995).

❏ **ELLEN MERIWETHER** (Philadelphia) received her law degree from George Washington University, *magna cum laude*, in 1985. She was a member of the *George Washington Law Review* and was elected to the Order of the Coif. Ms. Meriwether received a B.A. degree, *with highest honors*, from LaSalle University in 1981. She was an adjunct professor at LaSalle University teaching a course in the University's honors program from 1988-1993. Ms. Meriwether is a member of the Bar of the Commonwealth of Pennsylvania and is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Third Circuit, the Tenth Circuit and the Eleventh Circuit, and the United States District Court for the Eastern District of Pennsylvania. She is also a member of the Federal Courts Committee and the Cy Pres Committee of the Philadelphia Bar Association, and is a member of the Pennsylvania and American Bar Associations. Prior to joining the firm, Ms. Meriwether was associated with Saul Ewing from 1987 through 1992, where she handled a variety of litigation matters in both state and federal court.

❑ *BRYAN L. CLOBES* (Philadelphia) is a 1988 graduate of the Villanova University School of Law and received his undergraduate degree from the University of Maryland. While in law school, Mr. Clobes clerked for Judge Arlin M. Adams of the United States Court of Appeals for the Third Circuit and Judge Mitchell H. Cohen of the United States District Court for the District of New Jersey. In 1988, after graduating from law school, Mr. Clobes served as a law clerk to Judge Joseph Kaplan of the Maryland Circuit Court in Baltimore. From 1989 through June, 1992, Mr. Clobes served as Trial Counsel to the Commodity Futures Trading Commission in Washington, D.C. Mr. Clobes authored *In the Wake of Varity Corp. v. Howe: An Affirmative Duty to Disclose Under ERISA,* 9 DePaul Bus. L.J. 221 (1997). Mr. Clobes is also a member of the Amicus Committee of the National Association of Securities and Commercial Law Attorneys and he has authored briefs filed with the Supreme Court in a number of recent ERISA cases, including *Varity Corp. v. Howe* and *Schoonejongen v. Curtiss-Wright Corp.* Mr. Clobes has been admitted to the bar in New Jersey and Pennsylvania, the Supreme Court of the United States, the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania.

❑ *JENNIFER WINTER SPRENGEL* (Chicago) is a 1990 graduate of DePaul University College of Law, where she was a member of the *DePaul University Law Review.* She received her undergraduate degree from Purdue University in 1987. Ms. Sprengel has handled a variety of commercial litigation matters in both state and federal court. Ms. Sprengel is admitted to practice law in Illinois, the United States District Court for the Northern District of Illinois and the United States Court of Appeals for the Third and Seventh Circuits.

❑ *MICHAEL J. WILLNER* (Philadelphia) graduated from the University of Pennsylvania in 1984 and received his J.D., *cum laude*, from the Temple University School of Law in 1988. In law school, he received the American Jurisprudence Award for Secured Transactions and was a member of the Temple Law Review. After law school, Mr. Willner served as a law clerk to Senior Judge John B. Hannum of the United States District Court for the Eastern District of Pennsylvania. He then was associated with Duane Morris & Heckscher, where his practice included civil trial and appellate litigation in a variety of matters. Beginning in 1997, he was a principal of Kane, Willner & Holman, a boutique commercial litigation firm in Philadelphia. Mr. Willner has been admitted to the bar in Pennsylvania, the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania. Mr. Willner joined the firm in September 2001.

❑ *WILLIAM R. KANE* (Philadelphia) is a graduate of the Temple University School of Law, where he received his law degree, *cum laude,* in 1990 and an LL.M. in Trial Advocacy in 1994. He received his undergraduate degree, magna cum laude, from Temple University in 1983. Prior to his legal career, he was an Assistant Vice President for First Pennsylvania Bank and Corporation in the Public and Investor Relations Department, where he received the Chairman's Excellence Award for outstanding service. Mr. Kane began his law career with Duane Morris & Heckscher in 1990, where his practice focused on commercial litigation matters. Beginning in 1997, he became a principal in Kane, Willner & Holman, a boutique commercial litigation firm based in Philadelphia. In 1998, Mr. Kane was appointed to serve as a Chapter 7 panel trustee for the Office of the United States Trustee. In that role, he facilitated the administration of cases pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania. He has been

admitted to the bar in Pennsylvania and New Jersey. He also has been admitted to practice before the United States Court of Appeals for the Third and Eighth Circuits, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the District of New Jersey and the Southern District of New York. Mr. Kane joined the firm in September 2001.

❑ *ANTHONY FATA* (Chicago) joined the firm in in 2003. Prior to his joining the firm, he was an associate in the trial practice of a major national law firm based in Chicago, where he spent three and a half years defending corporations, officers and directors in securities fraud and consumer fraud class actions, SEC investigations and enforcement actions, as well as product liability and ERISA cases. Mr. Fata also spent a significant amount of time handling general commercial litigation matters on behalf of corporate clients. Mr. Fata is the author of "Class Actions: Attaining Settlement Class Certification Under Amchem and Ortiz," 19 *Product Liability Law & Strategy* 1 (May 2001) and was a contributing author of *IICLE Securities Law*, Chapter 15 — Civil Liabilities And Remedies (2003). Mr. Fata is licensed to practice in Illinois and before the U.S. District Court for the Northern District of Illinois. Mr. Fata received his law degree, with honors, from The Ohio State University in 1999, where he was elected to the Order of the Coif, and his bachelor's degree from Miami University in 1995.

❑ *NYRAN ROSE PEARSON* (Chicago) received her undergraduate degree *cum laude* from Illinois Wesleyan University in 1995, and earned her law degree from the University of Oregon School of Law in 1999. Following law school, Ms. Pearson served as a clerk to the Honorable George A. Van Hoomissen of the Oregon Supreme Court. She is the author of *Protecting Agricultural Lands: An Assessment of the Exclusive Farm Use Zone System*, 77 Oregon Law Review 993 (1998). Ms. Pearson is admitted to practice in the state courts of Oregon and Illinois, as well as the United States District Courts for the Northern District of Illinois and the Southern District of Illinois. She is also a member of the American and Chicago Bar Associations.

### *ASSOCIATES*

❑ *MELODY FORRESTER* (Philadelphia), an associate with the firm since 1999, is a 1993 graduate of Columbia University School of Law. Ms. Forrester received her B.A., *cum laude*, from the University of Virginia in 1985. As counsel to the firm from 1995 through 1998, Ms. Forrester focused on complex securities and antitrust class actions. From 1989 through 1995, she served as a litigation support consultant to Rogers & Wells in New York. Ms. Forrester is admitted to practice in the states of Pennsylvania and New York and the United States District Court for the Eastern District of New York. She is also a member of the New York State and American Bar Associations.

❑ *CHRISTOPHER B. SANCHEZ* (Chicago) is a 2000 graduate of the DePaul University College of Law, where he wrote for the *Journal of Art and Entertainment Law* and was the school's student representative for the Hispanic National Bar Association. He received his undergraduate degree, *cum laude*, from the University of New Mexico in 1996. Mr. Sanchez is currently a member of the Hispanic National Bar Association.

❑ *TIMOTHY M. FRASER* (Philadelphia) joined the firm in 2005. His practice currently focuses on antitrust and consumer fraud class action litigation and private investor securities arbitrations. He is currently involved in actions against insurance brokers and casket manufacturers. Before joining the firm, his practice focused on municipal liability defense,

with an emphasis in civil rights and employment discrimination defense. Mr. Fraser earned his undergraduate degree in Political Science and Economics from Villanova University in 2000. He graduated from Villanova University School of Law in 2003. He is licensed to practice law in Pennsylvania, New Jersey and Florida.

### OF COUNSEL

❑ *DOM J. RIZZI* (Chicago) received his B.S. degree from DePaul University in 1957 and his J.D. from DePaul University School of Law in 1961, where he was a member of the *DePaul University Law Review*. From 1961 through 1977, Judge Rizzi practiced law, tried at least 39 cases, and briefed and argued more that 100 appeals. On August 1, 1977, Judge Rizzi was appointed to the Circuit Court of Cook County by the Illinois Supreme Court. After serving as circuit court judge for approximately one year, Judge Rizzi was elevated to the Appellate Court of Illinois, First District, where he served from 1978 to 1996. Judge Rizzi also teaches at both the undergraduate and graduate level: since 1980, he has been a part-time faculty member of the Loyola University School of Law and, since 1992, he has been a part-time faculty member at the University of Illinois-Chicago. Judge Rizzi became counsel to the firm in October, 1996.

❑ *MICHAEL S. TARRINGER* (Philadelphia) is a 1993 graduate of the Villanova University School of Law. Mr. Tarringer received his undergraduate degree, *summa cum laude*, from Philadelphia University in 1987. Before joining the firm, Mr. Tarringer served as a law clerk to Judge Robert F. Kelly of the United States District Court for the Eastern District of Pennsylvania. Mr. Tarringer also worked at Levin, Fishbein, Sedran & Berman as a contract attorney for the Plaintiffs' Legal Committee in the *Orthopedic Bone Screw Products Liability Litigation*, MDL 1014, as well as the Plaintiffs' Management Committee in the *Diet Drugs Products Liability Litigation*, MDL 1203. Mr. Tarringer is admitted to the bar in Pennsylvania, the United States Court of Appeals for the Third Circuit, and the United States District Court for the Eastern District of Pennsylvania.