UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHARON BOBBITT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 04-12263-PBS |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| ANDREW J. FILIPOWSKI, et al., | ) ) | |
| Defendants. | ) ) | |
| JAMES F. HOWARD, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 06-11072-PBS |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| ANDREW J. FILIPOWSKI, et al., | ) ) | |
| Defendants. | ) ) ) | |

DECLARATION OF KEN KEATLY

1    I, Ken Keatly, declare and state as follows:

2       1.     I am over 18 years of age.  I make this declaration based upon my own personal

3    knowledge and if called upon, I could and would competently testify to the facts contained

4    herein.

5       2.     I work for L.R. Hodges & Associates, Ltd. ("LRH&A"), a private investigation

6    firm licensed by the State of California, Bureau of Security and Investigative, License Number

7    PI 18129.  LRH&A provides investigative and consulting services in the area of complex civil

8    litigation.  LRH&A has investigated over 650 federal and state securities, derivative, anti-trust

9    and consumer class actions over the last 13-plus years.

10      3.     I have been employed by LRH&A for over eight years, and in that time, I have

11   worked on well-over 150 securities class actions, including playing a lead investigative role on

12   the Enron, Qwest, Cisco, Titan Corporation, and Surebeam Corporation securities cases, among

13   many others that have resulted in favorable settlements for our clients.  As both Director of

14   Investigations and Case Manager, I manage assignments received from the firm's clients to

15   ensure the development of meaningful results to the extent possible within the resources and

16   opportunities available and appropriate to the specific assignment.

17      4.     The law firm of Cauley Geller Bowman & Rudman, LLP retained LRH&A on

18   September 30, 2003 to render investigative services in connection with the _divine, Inc. Securities_

19   _Litigation_.  Our principal assignment, typical of securities investigations, was to identify, locate,

20   and interview former employees and other knowledgeable third-party witnesses in an effort to

21   develop detailed facts to meet the strict pleading requirements of the Private Securities Litigation

22   Reform Act of 1995.

23      5.     A key objective of my job is to ensure that LRH&A executes the most efficient

24   and effective investigation possible for the good of our client and the class.  My work includes

25   receiving the assignment from the client, determining the client's needs and objectives, and

26   formulating an investigation plan appropriate to the assignment.  Since LRH&A specializes in

27   complex litigations, particularly federal securities actions, formulating an investigation plan

28

- 1 -

1   includes a detailed assessment of the defendant entity involved, the specific class allegations, in-
2   depth research and analysis of industries and technologies relevant to the defendant company,
3   and understanding the accounting, public disclosures and public financial reporting issues central
4   to the case. As a case manager, I not only interview witnesses, I also oversee the work of
5   investigation staff and personnel, who are actively engaged in identifying and locating
6   prospective witnesses, contacting and interviewing those witnesses, drafting memoranda
7   memorializing their findings (the substance of which is incorporated by our clients into their
8   pleadings), researching various often intricate issues, and maintaining detailed case files of the
9   considerable findings developed in the course of an active investigation.  This was exactly the
10  nature of the work that I, and the team I oversaw, performed on the *divine* securities litigation.

11          6.       Securities actions are inherently complex, and the *divine* case was no exception.
12  divine's business model was very unconventional and involved acquiring myriad different
13  business entities of often widely different types and business models.  The acquisitions and terms
14  of the acquisitions were topics of interest in the investigation and remained of interest as divine
15  itself entered into bankruptcy and those assets were divested.  Understanding the company's
16  acquisition strategy and subsequent divestitures of those assets required in-depth, intricate
17  research performed by our research staff.  The convolutions of divine's business model and
18  acquisition strategy meant that divine had myriad diverging lines of business that ranged from
19  web-hosting to fulfilling magazine subscriptions, as well as less-than-straightforward real estate
20  transactions and property holdings.  That one of the company's subsidiaries was involved in a
21  criminal investigation shortly before divine's own entry into bankruptcy added yet another level
22  requiring investigation.

23          7.       Fundamental to a securities investigation is the need to identify and locate
24  prospective witnesses who can potentially address the case issues and then contact them in hopes
25  they will participate in an informal interview in which they are under no obligation to participate
26  – again, all with the goal of meeting the PSLRA's very stringent pleading standards.  When
27  receiving an assignment, we are solely reliant upon our proprietary processes, utilization of
28

1   sophisticated databases, online and public filing resources and, most importantly, the skill and
2   experience of our personnel who know how utilize these resources.  The investigative services
3   performed by LRH&A are billed at varied professional rates based upon the particular tasks
4   performed and services rendered, as well as the skill-level and experience possessed by the
5   investigator.  Our team is comprised of personnel with diverse educational backgrounds and
6   professional credentials.

7       8.      The investigator who performed witness interviews with me on the *divine* case
8   had practical experience investigating multiple litigations of his own, and was a licensed, non-
9   practicing attorney who had formerly practiced law (and, indeed, has returned to the practice of
10  law).  Likewise, our Issues Researchers possess considerable levels of professional experience
11  and educational credentials needed to work on some of the most complex elements of the Enron
12  securities litigation, and have years of professional experience in research and library science;
13  one of these Issues Researchers is also a non-practicing attorney.  As indicated above, witness
14  development research is a very critical, detail-oriented and analytical role within our
15  organization, which requires reviewing and assessing the relevance of copious amounts of data
16  derived from diverse databases, as well as managing the development, production and
17  presentation of this data throughout the course of the litigation, which includes tracking and
18  locating new witness leads from witness interviews as the case progresses.  Locating subjects is
19  also a very important and often-nuanced task (that can, for instance, require the elimination of
20  numerous multiple subject matches for common names to successfully locate the correct
21  subject).  Witness development work is important throughout the duration of a case and is not
22  just used during the period of active outreach to witnesses, but also during the formal Discovery
23  stage of litigation, and typically as a foundation for Rule 26 disclosures.  It is a specialized and
24  highly critical role that we have determined through many years of practical experience is best
25  performed by personnel dedicated to the position and capable of performing the detail-intensive
26  and analytical work required within the typically compressed deadlines under which our
27  investigations must be conducted.   Our witness development personnel have varied college
28

- 3 -

degrees, post-graduate work, extensive training and experience, in addition to the skill, tenacity and exactitude vital to this position.

9.    As part of our investigation (and without the benefit of formal discovery), LRH&A's witness development and research staff identified and located as necessary several hundred witnesses, including former divine employees, as well as subjects with relevant associations to the defendant company and/or individual defendants.   Of this potential witness pool, LRH&A made direct contact with over 35 witnesses, resulting in many lengthy and substantial interviews and made overtures or contact attempts to numerous others over the course of our investigation.   The objective of these informal interviews was to develop factual information on the myriad complex issues unique to the _divine_ litigation.  Through these contacts and interviews, the factual information we developed was drafted into formal investigation memoranda, the substance of which was used in amending the complaint has contributed to the current settlement.

10.    To perform our investigation and derive results relating to the allegations, LRH&A's witness-development personnel expended 73.4 hours at a rate of $115.00 per hour to research, identify, and confirm the employment status of certain witnesses, as well as managing and updating an ever-changing witness list to support other investigative team members.  Our research staff expended 133.50 hours at rates ranging between $150.00-$200.00 per hour to perform research and report on emerging case issues and locating numerous prospective witnesses.  The case manager and interviewing investigator expended a combined 231.10 hours at rates between $150.00-$225 per hour to perform overall strategizing, planning and execution to contact, engage and conduct interviews with targeted third-party witnesses, and to prepare comprehensive interview summaries and other case reports.   These team members were also involved in analyzing key case issues, as well as establishing and executing the joint litigation-investigation team plan, and participating in client briefings.   Our administrative support personnel handled various case filing, printing and organizing activity to support the efficient

administration of the case.  Our professional services rates are the same for all of the cases that we work whether they are securities cases or other complex litigations.

11.    In sum, LRH&A's team members expended 438 combined investigative hours for a total cost to shareholders of $80,478.56, which includes $72,817.50 in fees and $7,661.06 in investigation-related expenses.   The overall blended hourly rate charged on this case for all combined services rendered was approximately $166.25 per hour.

12.    I declare under penalty of perjury that the foregoing is true and correct.  Executed this 1st day of July, 2008, at San Diego, California.

_____
KEN KEATLY

- 5 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 1, 2008.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

COUGHLIN STOIA GELLER
        RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:elleng@csgrr.com

# Mailing Information for a Case 1:04-cv-12263-PBS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Bruce S. Barnett**
  bruce.barnett@dlapiper.com,janine.medina@dlapiper.com

- **Thomas David Brooks**
  tdbrooks@sperling-law.com

- **Joel G. Chefitz**
  jchefitz@mwe.com

- **Christopher J. Panos, Trustee of the Sabine, Inc. Liquidating Trust**
  jkoltun@craigmacauley.com

- **Joseph Edward Collins**
  joseph.collins@dlapiper.com

- **Mayeti Gametchu**
  mgametchu@wolfblock.com,mahall@wolfblock.com

- **Ellen Anne Gusikoff Stewart**
  elleng@csgrr.com,elleng@csgrr.com

- **James E. Hanlon , Jr**
  hanlonj@howrey.com

- **Howard T. Longman**
  tsvi@aol.com

- **Kevin J. O'Connor**
  koconnor@wolfblock.com,mahall@wolfblock.com

- **David Pastor**
  dpastor@gilmanpastor.com,rkaloutas@gilmanpastor.com,sdurgin@gilmanpastor.com

- **Stephanie R. Pratt**
  spratt@segalroitman.com,jstein@segalroitman.com

- **David A. Rosenfeld**
  drosenfeld@csgrr.com

- **Samuel H. Rudman**
  SRudman@csgrr.com

- **Anne R. Sills**

asills@segalroitman.com,sgillin@segalroitman.com,tsullivan@segalroitman.com

- **Bruce S. Sperling**
  bss@sperling-law.com

- **Mary T. Sullivan**
  msullivan@segalroitman.com,jstein@segalroitman.com,sgillin@segalroitman.com

- **Marc A. Topaz**
  ecf_filings@sbtklaw.com

- **Marc M. Umeda**
  notice@ruflaw.com,zimmer@ruflaw.com,umeda@ruflaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Guri Ademi
Ademi & O'Reilly
3620 East Layton
Cudahy, WI 53110

Shpetim Ademi
Ademi & O'Reilly
3620 East Layton
Cudahy, WI 53110

Celiza Patricia Braganca
Sperling & Slater
55 West Monroe Street
Suite 3200
Chicago, IL 60603

Michael A. Duffy
Kirkland &Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Eugene J. Frett
Sperling & Slater
55 West Monroe Street
Suite 3200
Chicago, IL 60603

John A.D. Gilmore
DLA Piper Rudnick Gray Cary US LLP
One International Place, 21st Floor
100 Oliver Street
Boston, MA 02110-2600

John F. Hartmann
Kirkland & Ellis LLP
200 East Randolph Drive
```

Chicago, IL 60601

**Bruce C. Howard**
Law Offices of Robert D. Allison
122 South Michigan Avenue 1850
Chicago, IL 60603

**Douglas Warren Hyman**
Piper Rudnick LLP
203 North LaSalle Street
#1900
Chicago, IL 60601-1293

**Samuel Bayard Isaacson**
Piper Rudnick LLP
203 North LaSalle Street
#1900
Chicago, IL 60601-1293

**Daniel J. Lyne**
Hanify & King
Professional Corporation
One Beacon Street
Boston, MA 02108-3107

**Marvin Allen Miller**
Miller Faucher and Cafferty, LLP
30 North LaSalle Street
Suite 3200
Chicago, IL 60602

**Christopher B. Sanchez**
Miller Faucher and Cafferty, LLP
30 North LaSalle Street
Suite 3200
Chicago, IL 60602

**Patrick J. Sherlock**
Beigel, Schy, Lasky, Cohen, Rifkind & Hennessey
11 South LaSalle
Suite 1600
Chicago, IL 60606

**Jennifer Winter Sprengel**
Miller Faucher and Cafferty, LLP
30 North LaSalle Street
Suite 3200
Chicago, IL 60602

**Lawrence A. Wojcik**
Piper Rudnick Gray Cary US LLP
203 N. LaSalle
Suite 1800
Chicago, IL 60601-1293